[Publish]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10277

_____

D.C. Docket No. 1:15-cv-04445-CAP


BRANDON ASTOR JONES,

                                        Plaintiff - Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 2, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON,
WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and
JILL PRYOR, Circuit Judges.

BY THE COURT:

A petition for hearing en banc having been filed, a member of this Court in active service having requested a poll on whether this case should be heard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a hearing en banc, IT IS ORDERED that the Petition for Hearing En Banc is DENIED.

MARCUS, Circuit Judge, joined by ED CARNES, Chief Circuit Judge, and TJOFLAT, HULL, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges, concurring in the denial of initial hearing en banc.

We concur in the denial of initial hearing en banc for the reasons stated in the panel order denying Jones's motion for stay. We attach a copy of the panel order hereto. We add these additional thoughts.

The sole issue presented in Jones's petition for initial hearing en banc is whether Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260 (11th Cir. 2014), incorrectly decided that "[n]either the Fifth, Fourteenth, or First Amendments afford [a prisoner] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." Id. at 1267 (quotations omitted). While Jones's complaint in the district court alleged an Eighth Amendment challenge to Georgia's method of execution as well as a separate due process challenge to Georgia's Lethal Injection Secrecy Act, O.C.G.A. § 42-5-36, he has not appealed from the district court's dismissal of the Eighth Amendment claim. Thus, Jones has chosen to raise only a free-standing due process claim for discovery, untethered to any other claim currently in litigation.

To ignore Jones's deliberate framing of his appeal runs afoul of the general rule that "[o]ur adversary system is designed around the premise that the parties

know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." Greenlaw v. United States, 554 U.S. 237, 243-44 (2008) (quotation omitted).  In our system, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Id. at 243.  Jones has not raised an Eighth Amendment claim on appeal, so we would not raise one for him.  And because the Supreme Court has held that there is no due process right to "discover grievances, and to litigate effectively once in court," see Lewis v. Casey, 518 U.S. 343, 354 (1996), his free-standing due process challenge to Georgia's secrecy statute is unmeritorious.

But even if we were empowered to revive Jones's Eighth Amendment method-of-execution challenge and were inclined to do so, it would not get Jones very far.  What Jones is seeking is a newly created federal due process right to pre-litigation discovery, ultimately in the hopes of challenging Georgia's lethal injection protocol in federal court.  But Federal Rule of Civil Procedure 8 required that Jones allege "enough facts to state a claim to relief that is plausible on its face" before he was entitled to discovery on his Eighth Amendment claim.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Nobody -- including Jones -- suggests that Jones adequately pled an Eighth Amendment claim in his complaint.  By insisting that he has a right to discovery in the absence of presenting a well-pleaded complaint, Jones travels on the novel idea that the law

4

will (or should) allow discovery first, and only then require him to meet the standards prescribed by the Supreme Court in <u>Baze v. Rees</u>, 553 U.S. 35, 50, 52 (2008) (plurality opinion), and <u>Glossip v. Gross</u>, 135 S. Ct. 2726, 2737 (2015). But the High Court has unambiguously required a plaintiff mounting a "successful[] challenge [to] a method of execution" to plead -- and if he seeks a stay to present some proof -- that (1) "the State's lethal injection protocol creates a demonstrated risk of severe pain," and (2) there is an alternative that is "feasible, readily implemented, and in fact significantly reduces a substantial risk of serious pain." <u>Glossip</u>, 135 S. Ct. at 2737 (alteration adopted and quotation omitted). And it is undeniable that Jones's complaint ignores the second requirement, alleging only at the highest order of abstraction that Georgia could "obtain their drugs from a different source."

Moreover, even if we were to assume that <u>Wellons</u> was wrongly decided and that Jones has some abstract and inchoate due process right to discover the identity of the source of the drugs and the name of the executioner so that he may challenge Georgia's execution protocol, we fail to see how Jones would have standing to challenge the Georgia secrecy statute. The Georgia secrecy statute only protects the identity of Georgia's drug source and the name of the executioners. <u>See</u> O.C.G.A. § 42-5-36(d). It does not deprive Jones of the ability to locate an alternative source. The relief he seeks -- to overrule <u>Wellons</u> and strike down

Georgia's statute -- would not, as we see it, enable him to plead a known and available alternative source of pentobarbital.

To the extent our dissenting colleagues suggest that Wellons did not perform the due process analysis required by Mathews v. Eldridge, 424 U.S. 319 (1976), it is worth noting that Jones has never so much as mentioned Mathews in any argument he's presented to this Court or suggested to us how the kind of balancing Mathews calls for would apply here.  Moreover, as the Eighth Circuit observed in Zink v. Lombardi, 783 F.3d 1089 (8th Cir. 2015):

> [T]he prisoners seek to discover information about the State's lethal-injection protocol in order to determine whether the protocol violates the Eighth Amendment.  The prisoners, however, have not pleaded a deprivation of rights under the Eighth Amendment.  This is not a case like Mathews, therefore, where there was an undisputed deprivation of an interest protected by the Due Process Clause, and the question was what process is due before the State may accomplish the deprivation.  Rather, the prisoners here . . . claim a freestanding right to detailed disclosure about Missouri's execution protocol.  A prisoner's "assertion of necessity -- that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment -- does not substitute for the identification of a cognizable liberty interest."

Id. at 1109 (citation omitted) (quoting Sepulvado v. Jindal, 729 F.3d 413, 419 (5th Cir. 2013)).  While the Eighth Amendment surely protects Jones from the deliberate infliction of unnecessary pain during his execution, Jones has failed to allege a plausible claim that Georgia's protocol threatens that interest.  Having failed to identify any liberty interest placed in jeopardy by Georgia, the due process balancing required by Mathews offers him little help today.

6

Finally, we repeat what the panel said about the equities: we ought to be particularly reluctant to interfere in Georgia's enforcement of its lethal injection protocol since its current protocol -- using compounded pentobarbital provided by an undisclosed source -- has actually been used at least seven times in the last year, without incident. See Terrell v. Bryson, 807 F.3d 1276, 1279 (11th Cir. 2015) (Marcus, J., concurring). Moreover, when Georgia suspected there was a problem with its two batches of "cloudy" drugs last spring, it postponed the scheduled executions until it could look into the matter. Id. There has been no claim that Georgia has encountered cloudy drugs since, nor that it has ever used contaminated drugs in an execution. Georgia also complied with the Open Records Act in providing Jones with its analysis, the drug logs, and its testing results.

Jones has done nothing to suggest that he has diligently prosecuted any claim challenging Georgia's secrecy law. He waited until almost three years after the codification of O.C.G.A. § 42-5-36 and over nine months after Georgia publicly disclosed its discovery of the "cloudy" pentobarbital before commencing this 42 U.S.C. § 1983 suit in federal district court at the end of December 2015.

On this record, we are hard pressed to see how this case is exceptionally important, important enough to take the extraordinary step of initial en banc review at this late hour. Every death case is important, and deserves our careful scrutiny. But even if we were to grant him the relief he seeks -- declaring the Georgia

secrecy statute unconstitutional -- we do not see how Jones would benefit.  He would have us strike down Georgia's secrecy law, overturn Wellons, and require the district court to allow discovery about Georgia's source of pentobarbital, all in the hope that learning the identity of the manufacturer will somehow provide a springboard to establish a potential, if currently unidentifiable, infirmity in Georgia's execution protocol.  That asks us to do too much.

This Court properly denied en banc review.

**ATTACHMENT**
**Date Filed: 02/01/2016**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10277
_____

D.C. Docket No. 1:15-cv-04445-CAP


BRANDON ASTOR JONES,

                                        Plaintiff - Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

                                        Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

Before MARCUS, WILSON and WILLIAM PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

In this capital case, Brandon Astor Jones appeals from the district court's recent order dismissing his civil rights complaint challenging Georgia's method of execution as violating the Fifth, Eighth, and Fourteenth Amendments. Jones's execution is currently scheduled for **February 2, 2016 at 7:00 p.m. EST**. Just a week before the scheduled execution, Jones petitioned our full Court for initial en banc review of that appeal; he also contemporaneously moved us for an emergency stay of execution. Although the petition for en banc review is now pending before the full Court, the application for a stay was filed with the panel, not the en banc court, and under our Local Rules, the emergency motion for stay is properly before the three-judge panel assigned to this case. See 11th Cir. R. 35-4 ("A petition for rehearing en banc tendered with respect to [an order ruling on a request for stay] will not be considered by the court en banc, but will be referred as a motion for reconsideration to the judge or panel that entered the order sought to be reheard.").[1]

In his § 1983 complaint -- just filed on December 22, 2015, in the Northern District of Georgia -- Jones alleged that Georgia's method of execution amounts to cruel and unusual punishment in violation of the Eighth Amendment, and that Georgia's Lethal Injection Secrecy Act, O.C.G.A. § 42-5-36, deprives him of the information necessary to challenge its lethal injection protocol, in violation of his

---

[1] At the time this opinion has issued, the en banc Court has not issued an order granting or denying the petition for hearing en banc. The motion for stay is not moot.

due process rights embodied in the Fifth, Eighth, and Fourteenth Amendments.[2]

The district court dismissed the complaint in its entirety because, it ruled, Jones's claims were barred by binding Circuit precedent. In this emergency motion, Jones says that he seeks a stay of execution pending the full Court's resolution of his en banc petition. He seeks en banc review over the following question:

> Does Georgia's lethal injection secrecy act violate Mr. Jones's Fifth, Eighth, and Fourteenth Amendment rights?

Notably, Jones has not challenged in either his petition for en banc review or in the motion for stay the district court's dismissal of his Eighth Amendment method-of-execution claim.[3]

---

[2] Georgia's lethal injection secrecy statute provides:

> The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure under Article 4 of Chapter 18 of Title 50 or under judicial process. Such information shall be classified as a confidential state secret.

O.C.G.A. § 42-5-36(d)(2); see id. § 42-5-36(d)(1) (defining "identifying information" as "any records or information that reveals a name, residential or business address, residential or business telephone number, day and month of birth, social security number, or professional qualifications").

[3] The remaining background and procedural history of this case have been laid out most recently and at some length in Jones v. GDCP Warden, __ F.3d __ (11th Cir. Jan. 28, 2016). There, we just denied Jones's motion to recall the mandate in his prior habeas case, Jones v. GDCP Warden, 753 F.3d 1171 (11th Cir. 2014), and his motion for stay of execution based on the motion to recall. On January 27, 2016, Jones filed a successive habeas corpus petition in state court arguing that his sentence is unconstitutionally disproportionate and excessive in violation of the Eighth and Fourteenth Amendments. That claim has not been filed in federal court. Jones

11

I.

It is by now axiomatic that a court may grant a stay of execution only if the moving party establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." See Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011). "[T]he equitable principles at issue when inmates facing imminent execution delay in raising their . . . challenges are equally applicable to requests for both stays and injunctive relief" which are "not available as a matter of right." Williams v. Allen, 496 F.3d 1210, 1212-13 (11th Cir. 2007) (internal quotations omitted). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill v. McDonough, 547 U.S. 573, 584 (2006).

After careful review, we deny Jones's emergency motion for stay because he has not shown a substantial likelihood of success on the merits and the equities counsel against imposing the stay.

A.

---

also filed an accompanying motion for stay of execution in state court. On January 29, 2016, Georgia's superior court denied both motions.

12

We begin with the first and most important question concerning a stay: whether Jones has shown a substantial likelihood of success on the merits of his due process claim. Our binding precedent forecloses Jones's due process claim, and thus Jones cannot show a substantial likelihood of success. See Terrell v. Bryson, 807 F.3d 1276 (11th Cir. 2015); Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260 (11th Cir. 2014). In Wellons, a prisoner argued that "the dearth of information regarding the nature of the pentobarbital that will be used in his execution and the expertise of those who will carry it out violates the First Amendment [and] his right to due process." 754 F.3d at 1267. Relying on Supreme Court precedent, a panel of this Court held that "[n]either the Fifth, Fourteenth, or First Amendments afford [a prisoner] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." Id. at 1267 (quotations omitted). The Supreme Court denied a petition for certiorari. Wellons v. Owens, 134 S. Ct. 2838 (2014). We reapplied this holding and rejected another identical claim in Terrell, 807 F.3d at 1276, and again the Supreme Court denied certiorari, Terrell v. Bryson, No. 15-7282, 577 U.S. _____ (Dec. 8, 2015).

Under our Circuit's prior precedent rule, we are bound to follow a prior binding precedent "unless and until it is overruled by this court en banc or by the

13

Supreme Court." United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation omitted). Jones has not argued that Wellons conflicts with any of our decisions or those of the Supreme Court. His claim is foreclosed by our precedent and he cannot succeed on the merits.

Moreover, no other circuit court has ever recognized the kind of due process right-of-access claim that Jones now asserts, and the two other circuit courts of appeal that have faced similar challenges to this kind of state secrecy law have each squarely rejected the claim twice. See Zink v. Lombardi, 783 F.3d 1089, 1109 (8th Cir. 2015), cert. denied, 135 S. Ct. 2941 (2015) ("We agree with the Eleventh and Fifth Circuits that the Constitution does not require such disclosure. A prisoner's 'assertion of necessity -- that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment -- does not substitute for the identification of a cognizable liberty interest.'" (citations omitted)); Trottie v. Livingston, 766 F.3d 450, 452 (5th Cir. 2014), cert. denied, 135 S. Ct. 41 (2014) ("A due process right to disclosure requires an inmate to show a cognizable liberty interest in obtaining information about execution protocols. Trottie speculates that there are unknowns regarding the drug to be used which may add an unacceptable risk of pain and suffering. However, we have held that an uncertainty as to the method of execution is not a cognizable liberty interest."); Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013) ("There is no violation of the Due Process Clause

14

from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol."); Williams v. Hobbs, 658 F.3d 842, 852 (8th Cir. 2011) (holding that the prisoners, who argued that the Arkansas Method of Execution Act violated the due process clause because its secrecy denied them "an opportunity to litigate" their claim that the execution protocol violated the Eighth Amendment, failed to state a plausible due process access-to-the-courts claim).[4]

Jones has not identified any cognizable liberty interest infringed by the Georgia secrecy law nor has he even begun to describe the framework for analyzing this novel constitutional right. Jones challenges the Georgia statute pursuant to 42 U.S.C. § 1983, which "is not itself a source of substantive rights" and requires Jones to "identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). The sole question Jones presents in this motion for stay -- and indeed the only one for which he seeks initial en banc review -- is whether Georgia's secrecy law violates his claimed Fifth and Fourteenth Amendment rights "to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or

---

[4] We recognize that the Ninth Circuit addressed a similar claim in Wood v. Ryan, 759 F.3d 1076, 1077-78 (9th Cir.), vacated, 135 S. Ct. 21 (2014). There, the prisoner sought information from the Arizona Department of Corrections regarding the method of his execution, and argued that by withholding this information, the Department had violated his First Amendment rights. The district court denied a preliminary injunction, and the Ninth Circuit reversed, concluding that "Wood has presented serious questions going to the merits of his claim." Id. However, the Supreme Court promptly reversed that decision, without opinion or dissent, and granted the state's application to vacate the judgment. Ryan v. Wood, 135 S. Ct. 21 (mem) (2014).

15

persons who will manufacture the drugs, and who will place the catheters," Wellons, 754 F.3d at 1267 (quotations omitted), so that he may effectively challenge Georgia's lethal injection protocol. While his complaint in the district court alleged an Eighth Amendment challenge to Georgia's method of execution as well as a separate challenge to the secrecy statute based on due process, he has not appealed from the district court's dismissal of the Eighth Amendment claim.

With the companion Eighth Amendment claim no longer at issue on appeal, all we have before us is Jones's stand-alone claim that Georgia's secrecy statute infringes his ability to "discover grievances, and to litigate effectively once in court" -- a right the Supreme Court has told us the Constitution does not guarantee to him. See Lewis v. Casey, 518 U.S. 343, 354 (1996). Having untethered the Eighth Amendment claim from this appeal, Jones has no claim that implicates any constitutional right. Thus, in challenging the Georgia secrecy statute, Jones has failed to state a claim that § 1983 can redress.

B.

But even if we were to also consider Jones's Eighth Amendment method-of-execution challenge -- which was dismissed by the district court and is not a part of his appeal -- in deciding whether to grant a stay, there is still a fatal flaw in that claim: he has failed to adequately plead, let alone show a substantial likelihood, that there is an "alternative that is feasible, readily implemented, and in fact

16

significantly reduces a substantial risk of severe pain." Glossip v. Gross, 135 S. Ct. 276, 2737 (2015) (quotation omitted and alteration adopted); see also Baze v. Rees, 553 U.S. 35, 50, 52 (2008) (plurality opinion)). The Supreme Court has recently reiterated the elements of an Eighth Amendment method-of-execution challenge and the necessary showing a prisoner must make to receive a stay of execution:

> [P]risoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is " 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " To prevail on such a claim, "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " . . . [P]risoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."
>
> [T]he requirements of an Eighth Amendment method-of-execution claim [are summarized] as follows: "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives." The preliminary injunction posture of the present case thus requires petitioners to establish a likelihood that they can establish both that [the State's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives.

Glossip, 135 S. Ct. at 2737 (2015) (citations omitted). Thus, prisoners seeking a stay must "establish a likelihood that they can establish" both that (1) the protocol

creates a "sure or very likely" risk of causing "serious harm," and (2) this risk is substantial when compared to the known and available alternatives.

Jones's complaint ignores the second element, alleging only at the highest order of abstraction that Georgia could "obtain their drugs from a different source." This conclusory allegation about an alternate source for the drugs does not provide "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint is insufficient to satisfy Jones's pleading burden under Federal Rule of Civil Procedure 8, which required him to "plead[] factual content that allows the court to draw the reasonable inference," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), that Georgia has access to a "feasible, readily implemented" alternative source of pentobarbital, Glossip, 135 S. Ct. at 2737. And because we are considering Jones's motion to stay, he is also required to present some body of evidence showing a substantial likelihood that he would ultimately be able to prove this element. He has provided us with nothing on this point. Having failed to adequately allege, let alone provide factual support for the second element of his Eighth Amendment claim, Jones has not shown a substantial likelihood that he will succeed on the merits of his Eighth Amendment claim.

C.

Jones's application for stay encounters a third even more basic problem. Even if we were to assume that Jones has some due process right to effectively discover and litigate a potential Eighth Amendment violation -- which, as we've explained, no court has ever sanctioned -- there is a serious and substantial question about whether the Georgia statute has caused any harm to that right and, therefore, whether Jones even has standing to challenge the statute.

In order to establish Article III standing, "a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997) (quotations omitted) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (quotation omitted); E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 983 (11th Cir. 1990). "In fact, we are obliged to consider standing sua sponte even if the parties have not raised the issue because an appellate court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007) (quotation omitted).

We do not see how Jones can claim "an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," Lujan, 504 U.S. at 560 (quotations and citations omitted) -- by operation of the Georgia statute. The Georgia secrecy law has not prevented him from identifying an alternative source of pentobarbital that was "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain" -- a requirement plainly prescribed by the Supreme Court in Glossip, 135 S. Ct. at 2737, and Baze, 553 U.S. at 52, as a necessary predicate to any Eighth Amendment method-of-execution claim. The Georgia statute only protects information about the specific drug sources Georgia actually is using and identifying information about any person or entity who participates in the execution of a death sentence. See O.C.G.A. § 42-5-36(d). It does not deprive Jones of the ability to locate an alternative source.

Because the Georgia secrecy statute has not likely injured Jones by preventing him from pleading an otherwise valid Eighth Amendment claim, we do not see how Jones has shown an injury in fact. Thus, on this record, granting Jones the ultimate relief he seeks -- declaring that statute unconstitutional and fashioning a new, freestanding constitutional right of access to discovery -- would not bring him redress because that statute did not injure his ability to satisfy Glossip's requirements in the first place. "Relief that does not remedy the injury suffered

20

cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998). Without a concrete, particularized injury traceable to the Georgia statute, we have real doubt about the justiciability of Jones's abstract access to information claim.

## II.

Jones is not entitled to a stay of execution for still another reason: the equities are not in his favor. Injunctive relief, including a stay of execution, is an equitable remedy that is not available as a matter of right. Brooks v. Warden, __ F.3d __, 2016 WL 212427, at *9 (11th Cir. Jan. 19, 2016), cert. denied sub nom. Brooks v. Dunn, No. 15-7787, 2016 WL 235248 (U.S. Jan. 21, 2016). As the Supreme Court has recognized, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Hill, 547 U.S. at 584. We are particularly reluctant to interfere in Georgia's enforcement of the death penalty since its current protocol -- using compounded pentobarbital provided by an undisclosed source -- has actually been used at least seven times in the last year, without incident. See Terrell, 807 F.3d at 1279 (Marcus, J., concurring). Moreover, when Georgia suspected there was a problem with its two batches of "cloudy" drugs last spring, it postponed the scheduled executions until it could look into the matter. Id. There has been no

21

claim that Georgia has encountered cloudy drugs since, nor that it has ever used contaminated drugs in an execution.  Georgia also complied with the Open Records Act in providing Jones with its analysis, the drug logs, and its testing results.  In fact, in the most recent challenge to Alabama's lethal injection protocol -- which uses three drugs, none of which are pentobarbital -- the prisoner argued that the state should be using a single-injection protocol of compounded pentobarbital, the very thing that Georgia uses.  See Brooks, 2016 WL 212427, at *5.

Jones, for his part, has waited an awfully long time to ask this Court to stay his execution.  The Supreme Court has unanimously instructed the lower federal courts on multiple occasions that we must apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such time as to allow consideration of the merits without requiring entry of a stay." Hill, 547 U.S. at 584 (quoting Nelson v. Campbell, 541 U.S. 637, 650 (2004)).  Jones's challenge to Georgia's secrecy law amounts to a claim that could have easily been brought long ago, but for reasons unknown to us, he did not do so.

Jones's execution is set for this Tuesday, February 2, 2016 -- thirty-six years after the murder and first death sentence was imposed, nineteen years after the second death sentence was imposed and fifteen years after it became final, seven years after Jones filed his current federal habeas petition, and thirteen months after

we issued our mandate denying habeas relief in his original habeas case. Even more significant, Jones's specific challenge in this stay application is to Georgia's secrecy act, which was enacted thirty-four months ago in March 2013, and went into effect four months later. And even if his challenge was sparked by the spring 2015 discovery of the cloudy pentobarbital, that incident was made known as early as March 2, 2015. See Gissendaner v. Bryson, petition for cert. at 3, No. 14-8647 (U.S. Mar. 9, 2015) ("[O]n March 2, 2015 . . . Ms. Gissendaner's lawyers received a telephone call from . . . counsel for Respondents, who informed them that the execution would not go forward that evening because Respondents' drugs were 'cloudy.'"). Indeed, Gissendaner filed a new challenge to Georgia's protocol -- based on the March 2 discovery -- on March 9, 2015.

Yet during all of that time, Jones did nothing to challenge Georgia's execution protocol or its secrecy statute, even though nothing prevented him from filing his § 1983 action anytime over the last three years, or even over the last year.[5] Instead, Jones waited to file this § 1983 action in federal district court until

---

[5] To the extent the claim has been made that prisoners under sentence of death face a "catch-22," because if they are required to challenge execution protocols in a timely manner, then the protocols may change by the time of their execution date, we remain unpersuaded. Jones has not raised a method-of-execution challenge on appeal, but rather a stand-alone due process challenge to Georgia's secrecy law. That law went into effect two-and-a-half years ago. If Jones -- who was already under sentence of death at the time -- had a right to access the information protected by the Georgia secrecy statute, as he claims, that right was infringed when the law went into effect, and could have been challenged then.

December 22, 2015.  The district court dismissed the action on January 21, 2016; and he did not file a notice of appeal with this Court until January 25, 2016, at which point he moved this Court for a stay of execution and also petitioned the Court to initially hear the case en banc.  While each death case is very important and deserves our most careful consideration, the fact that Jones has petitioned us for a stay of execution only at the very last moment, and without adequate explanation, also suggests to us that the equities do not lie in his favor.

The long and the short of it is that Jones cannot meet his burden for a stay.  Accordingly, his motion is denied.

**DENIED**.

---

But even if Jones's petition is viewed as also having raised a method-of-execution challenge, rather than just a claim about access to discovery, Jones faced no "catch-22" in being required to assert his Eighth Amendment claims or lose them.  If Jones had asserted his Eighth Amendment challenge and then Georgia changed its execution protocol, he would have suffered no prejudice because, if he was still concerned about a new protocol, he could have amended his complaint or filed a new civil rights action.  A far cry from a "catch-22," timely challenges to a state's method of execution benefit both the state and its inmates.  We can perceive no drawback to the prisoner.

24

WILSON, Circuit Judge, dissenting:

I do not believe that this court has jurisdiction to deny Brandon Jones's request for a stay. Moreover, I disagree with the Majority's conclusions that Jones has not shown a substantial likelihood of success on the merits and that the equities counsel against imposing a stay. Therefore, I respectfully dissent.

First, Jones's request for a stay is moot. Jones requested a stay pending this court's decision on whether to consider his challenge to Georgia's Lethal Injection Secrecy Act en banc, and, understanding that an en banc hearing will not take place, this court's decision to issue an opinion denying the motion is unnecessary.

Second, for the reasons discussed in my forthcoming dissent to this court's denial of Jones's request for an en banc hearing, I believe that Georgia's Lethal Injection Secrecy Act violates his right to due process under the Fifth, Eighth, and Fourteenth Amendments. The fact that Jones did not appeal the district court's decision on his Eighth Amendment method-of-execution claim does not doom his due process claim. Contrary to the Majority's assertions, Jones's decision not to appeal the district court's dismissal of the method-of-execution claim does not untether his due process challenge to the Secrecy Act from that claim. Jones argues in his briefing that without access to information protected by the Secrecy Act, his method-of-execution claim is foreclosed. In other words, Jones's due process claim is inextricably intertwined with his method-of-execution claim. In

25

light of this close relationship, if we find the Secrecy Act unconstitutional, then we have discretion to vacate and remand to allow the district court to consider Jones's method-of-execution claim. *See* 28 U.S.C. § 2106. Thus, Jones has stated a claim involving imminent injury: the Secrecy Act violates his due process rights by preventing him from pursuing his method-of-execution claim.

Finally, I find the Majority's arguments regarding the equities wholly unpersuasive, especially considering the recent factual and legal developments relevant to Georgia's lethal injection process and method-of-execution claims.

For these reasons and those to follow in my dissent from the denial of Jones's request for an en banc hearing, I dissent.

WILSON, Circuit Judge, dissenting, joined by MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges, and as to Part I by JORDAN, Circuit Judge:

The Constitution's prohibition against cruel and unusual punishment protects persons who are sentenced to death from being executed in a manner that denies basic human dignity. *See* U.S. Const. amend. VIII; *Glossip v. Gross*, 576 U.S. ___, ___, 135 S. Ct. 2726, 2737 (2015); *Baze v. Rees*, 553 U.S. 35, 50, 128 S. Ct. 1520, 1531 (2008) (plurality opinion). Indeed, "[b]y protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Hall v. Florida*, 572 U.S. ___, ___, 134 S. Ct. 1986, 1992 (2014) (internal quotation marks omitted). The Eighth Amendment relies on the Fifth and Fourteenth Amendments for support in fulfilling the constitutional promise of dignity in state-enforced deaths. That is to say, if persons who are sentenced to death are denied a fair opportunity to challenge an unconstitutional method of execution, then the Eighth Amendment's guarantee is meaningless. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 71 S. Ct. 624, 647–48 (1951) (Frankfurter, J., concurring) (protecting the "elementary rights of men" requires "fairness" and "[a]n opportunity to be heard").

Here, the State of Georgia's Lethal Injection Secrecy Act (Secrecy Act) denies death row prisoners, such as Brandon Jones, a fair opportunity to protect their Eighth Amendment rights because it precludes them from accessing

27

information necessary to challenge their method of execution.  As a result, these prisoners are denied the "basic ingredient of due process": "an opportunity to be allowed to substantiate a claim before it is rejected."  *See Ford v. Wainwright*, 477 U.S. 399, 414, 106 S. Ct. 2595, 2604 (1986) (plurality opinion) (internal quotation marks omitted).  Seeking a fair opportunity to challenge his method of execution, Jones requests that our court consider en banc whether the Secrecy Act violates his right to procedural due process.

In *Goldberg v. Kelly* and subsequent cases, the Supreme Court put forth a clear framework for examining procedural due process claims.  *See* 397 U.S. 254, 262–63, 90 S. Ct. 1011, 1017–18 (1970) ("The extent to which procedural due process must be afforded the [individual] is influenced by the extent to which he may be condemned to suffer grievous loss . . . and depends upon whether the [individual]'s interest in avoiding that loss outweighs the governmental interest [at stake.]" (citation and internal quotation marks omitted)); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972).  However, our court has consistently rejected due process challenges to the Secrecy Act without applying this framework.  Our failure to perform the proper analysis in these cases was legal error, and that error is fatal to our jurisprudence.  Under the *Goldberg* line of cases, the Secrecy Act violates the due process rights of Georgia's death row prisoners,

thereby undermining our Nation's requirement that those sentenced to death be humanely executed.

Accordingly, at a minimum, an en banc hearing is needed to rectify this court's failure to apply the proper procedural due process framework to challenges to the Secrecy Act. Moreover, I believe that, were we to apply the proper framework, we would conclude that the Secrecy Act is unconstitutional. For these reasons, I respectfully dissent from our court's denial of Jones's request to consider the constitutionality of the Secrecy Act en banc.

## I

Prisoners seeking to challenge their method of execution as unconstitutional under the Eighth Amendment face a "heavy burden." *Terrell v. Bryson*, 807 F.3d 1276, 1281 (11th Cir. 2015) (per curiam) (Martin, J., concurring). To succeed on a method-of-execution claim, a prisoner must show (1) "the method presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers," and (2) "identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (alteration adopted and internal quotation marks omitted). In the context of lethal injection, this means the prisoner must present evidence that the State's drug compound and/or injection process present a significant risk of harm. In addition, the prisoner must know enough about the

State's drug compound to be able to offer a distinguishable, feasible alternative.

Thus, information regarding the composition of the State's compound, the source

of the compound, the compound's manufacturing process, and the actual injection

process is critical to raising a lethal injection method-of-execution claim.[1]

Georgia relies on lethal injection to execute death row prisoners.  In 2013,

Georgia enacted the Secrecy Act to protect information related to its lethal

injection process.[2]  Under the Secrecy Act:

> The identifying information of any person or entity who
> participates in or administers the execution of a death
> sentence and the identifying information of any person or
> entity that manufactures, supplies, compounds, or
> prescribes the drugs, medical supplies, or medical
> equipment utilized in the execution of a death sentence
> shall be confidential and shall not be subject to disclosure
> . . . under judicial process.

Ga. Code § 42-5-36(d)(2).  Hence, the Secrecy Act "effectively insulates" the

"source, quality, and composition of" the State's lethal injection drug compound,

as well as details about the personnel tasked with carrying out executions—such as

their qualifications and training.  *See Terrell*, 807 F.3d at 1281 (Martin, J.,

---

[1] Indeed, one scholar has commented that, "because many [lethal injection drug compound suppliers] lack the ingredients, equipment, and processes to make . . . drugs safely, the practices of the drug supplier can be very relevant to the question of whether the lethal injection procedure creates a substantial risk of significant pain."  Eric Berger, *Lethal Injection Secrecy and Eighth Amendment Due Process*, 55 B.C. L. Rev. 1367, 1389 n.150 (2014).

[2] *See* Rhonda Cook & Bill Rankin, *Lethal Injection Secrecy Bill Wins Approval*, Atlanta J. Const. (Mar. 26, 2013 6:29 PM), http://www.ajc.com/news/news/stateregional-govt-politics/lethal-injection-secrecy-bill-wins-approval/nW4tK/, *archived at* http://perma.cc/MV2W-WXCS.

concurring). In other words, the Secrecy Act protects the exact information required to raise a method-of-execution claim under *Glossip*.

Shortly after the passage of the Secrecy Act, death row prisoners began challenging its constitutionality, asserting that it violates their due process rights by shielding information that is needed to pursue a method-of-execution claim. *See Wellons v. Commissioner*, 754 F.3d 1260, 1266 (11th Cir. 2014) (per curiam); *Gissendaner v. Commissioner* (*Gissendaner II*), 803 F.3d 565, 567 (11th Cir. 2015) (per curiam); *Terrell*, 807 F.3d 1276. These claims have divided our court, resulting in three of the six judges who reviewed the claims writing separately to voice concerns about the Secrecy Act's constitutionality. *See Wellons*, 754 F.3d at 1267–68 (Wilson, J., concurring); *Gissendaner II*, 803 F.3d at 579 (Jordan, J., dissenting); *Terrell*, 807 F.3d at 1281 (Martin, J., concurring); *id.* at 1283 (Jordan, J., concurring).

This court was first confronted with a challenge to the Secrecy Act in *Wellons*. In that per curiam opinion, the majority held: "Neither the Fifth, Fourteenth, or First Amendments afford [the appellant] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." *Wellons*, 754 F.3d at 1267 (internal quotation marks omitted). However, we only cursorily addressed the due process issues presented

by the Secrecy Act and did not engage in the *Goldberg* procedural due process analysis. *See id.* When assessing subsequent challenges to the Secrecy Act, we merely have deferred to *Wellons* instead of engaging in the proper constitutional analysis, even in the face of legal and factual developments that indicate *Wellons* was wrongly decided.[3] *See Gissendaner II*, 803 F.3d at 575–76; *Terrell*, 807 F.3d at 1276–77. As noted above, due to this incomplete approach, our precedents are legally deficient and contravene the *Goldberg* line of cases.

## II

The *Goldberg* analysis is a two-step test for resolving procedural due process claims. The first step requires a court to determine whether the interest at stake triggers due process protections. *See Morrissey*, 408 U.S. at 481, 92 S. Ct. at 2600. "Whether any procedural protections are due depends on the extent to which [the] individual will be condemned to suffer grievous loss." *Id.*, 92 S. Ct. at 2600

---

[3] Post-*Wellons*, there have been legal and factual developments that heavily bear on the constitutionality of the Act. First, in March 2015, Georgia delayed the execution of a death row prisoner after the State determined that its drug compound was defective. *See Gissendaner II*, 803 F.3d at 570. Judge Jordan noted the relevance of this development in his *Gissendaner II* dissent, asserting that "[the State] cannot hide behind [a] veil of secrecy once something has gone demonstrably wrong with [its drug compound]. . . . It is not asking too much to require Georgia to put on some evidence that will provide some level of confidence that its [drug compound] is no longer a problem." *Id.* at 579 (Jordan, J., dissenting). Second, subsequent to *Wellons*, the Supreme Court decided *Glossip*, which clarified the method-of-execution standard put forth in *Baze*. In *Baze*, seven justices wrote separately, creating confusion over the Court's holding and requiring the Court to revisit in *Glossip* the proper standard for challenging a method of execution. *See Glossip*, 135 S. Ct. at 2793–95 (Sotomayor, J., dissenting). *Glossip* confirmed that prisoners raising method-of-execution claims have a significant evidentiary burden, thus underscoring the importance of these prisoners having access to information about the challenged method.

32

(internal quotation marks omitted) (citing *Goldberg*, 397 U.S. at 263, 90 S. Ct. at 1018). After determining that an individual's interest requires some procedural protection, the court must move to the second step. *Id.*, 92 S. Ct. at 2600. Under that step, the court is tasked with identifying the "specific dictates of due process" demanded by the circumstances presented. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 902–03 (1976). This inquiry requires a weighing of "the governmental and private interests that are affected." *See id.* at 334, 96 S. Ct. at 902.

Applying the *Goldberg* analysis to Jones's method-of-execution procedural due process claim reveals that the Secrecy Act violates his constitutional rights. First, Georgia prisoners sentenced to death face an imminent threat of "grievous loss"—an inhumane execution—and thus are entitled to procedural protections when challenging their method of execution.[4] Second, weighing the interests of Georgia's death row prisoners, such as Jones, against those of the State of Georgia demonstrates that the due process owed the prisoners encompasses the right to access information shielded by the Secrecy Act.

## A

A painful, inhumane execution is an imminent threat of "grievous loss" faced by all those condemned to die at the hand of the State of Georgia. Generally,

---

[4] In fact, I cannot surmise a more grievous loss than an excruciating execution that violates one's right to be free from cruel and unusual punishment.

33

whether an individual is condemned to "grievous loss" depends on both the

"weight" of the individual's interest and "whether the nature of the interest is one

within the contemplation of the 'liberty or property' language of the Fourteenth

Amendment." *See Morrissey*, 408 U.S. at 481, 92 S. Ct. at 2600 (internal

quotation marks omitted). A Georgia prisoner facing execution has the weightiest

of interests in being free from a cruel and unusual execution—far less weighty

interests enjoy due process protections.[5] *See, e.g.*, *Cleveland Bd. of Educ. v.*

---

[5] Georgia has argued in the past that the interest at stake in method-of-execution claims is not sufficiently weighty to warrant due process protections because, unlike other contexts where the State's decision will definitely violate an individual's rights, there is only a *risk* that death row prisoners will be deprived of their Eighth Amendment right to a humane execution. However, given the grievousness of the loss at stake—a dehumanizing assault on an individual's body—and the prevalence of botched lethal injection executions, the interest at stake clearly warrants some procedural protections. *See* Berger, *supra* note 1 at 1426 ("The series of recent botched executions amply demonstrate that, far from being frivolous, inmates' lethal injection challenges identify very serious risks inherent in lethal injection, especially in states with a history of problems."); Mark Berman, *Arizona Execution Lasts Nearly Two Hours; Lawyer Says Joseph Wood Was "Gasping and Struggling to Breathe,"* Wash. Post (July 23, 2014), http: //www.washingtonpost.com/news/post-nation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/; Mark Berman, *Inmate Dies Following Botched Oklahoma Execution, Second Execution Delayed*, Wash. Post (April 29, 2014), http://www.washingtonpost.com /news/post-nation/wp/2014/04/29/oklahoma-execution-botched-inmate-still-dies-second-execution-delayed/; Erica Goode, *After a Prolonged Execution in Ohio, Questions over "Cruel and Unusual,"* N.Y. Times (Jan. 17, 2014), http://www.nytimes.com/2014/01/18/us/ prolonged-execution-prompts-debate-over-death-penalty-methods.html; Peter Baker, *Obama Orders Policy Review on Executions*, N.Y. Times (May 2, 2014), http://www.nytimes.com/2014/ 05/03/us/flawed-oklahoma-execution-deeply-troubling-obama-says.html; Andrew Buncombe, *Charles Warner Execution: Oklahoma Inmate's Last Words Are "My Body Is On Fire" as State Carries Out First Death Penalty in Nine Months*, The Indep. (Jan. 15, 2015), http:// www.independent.co.uk/news/world/americas/charles-warner-execution-my-body-is-on-fire-9981842.html. Considering Georgia's recent problems with its lethal injection drug compound, this is especially true for Georgia death row prisoners. *See Gissendaner II*, 803 F.3d at 579 (Jordan, J., dissenting); Tracy Connor, *Georgia Execution of Kelly Gissendaner Postponed for Drug Issue*, NBC News (Mar. 3, 2015, 5:58 PM), http://www.nbcnews.com/storyline/lethal-injection/georgia-execution-kelly-gissendaner-postponed-drug-issue-n315651; Declaration of Michael Jay, Ph.D. at 8, *Jones v. Bryson*, No. 1:15-cv-04445-CAP (N.D. Ga. Jan. 21, 2016)

*Loudermill*, 470 U.S. 532, 538–41, 105 S. Ct. 1487, 1491–92 (1985) (protecting property interest in civil servant job); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9–11, 98 S. Ct. 1554, 1560–61 (1978) (protecting interest in receiving public utilities).  In addition, there is no doubt that a prisoner's right to be free from an unconstitutional invasion of his body is a liberty interest under the Fourteenth Amendment.  *See Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891) ("No right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, *free from all restraint or interference from others*, unless by clear and unquestionable authority of law." (emphasis added)); *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 1041 (1990) (holding that prisoners have a right to bodily integrity, free from unconsented injections).  As such, Georgia death row prisoners raising Eighth Amendment method-of-execution claims are entitled to procedural due process protection that ensures they receive a fair opportunity to challenge their method of execution.

**B**

Turning to the second step of the *Goldberg* analysis, weighing the interests at stake demonstrates that the Secrecy Act impermissibly infringes on the due

(concluding that, based on the information released by Georgia, it is impossible to determine whether the problems with Georgia's drug compound that arose in the context of *Gissendaner II* have been resolved).

process rights of Georgia death row prisoners raising method-of-execution claims. Balancing the private and governmental interests implicated by a procedural due process claim, like Jones's, requires an assessment of "three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [State's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Mathews*, 424 U.S. at 335, 96 S. Ct. at 903; *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093 (1985) (applying the "*Mathews* factors" where the defendant alleged he was "denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty [was] at stake"). These factors dictate a finding that Georgia death row prisoners must be afforded access to the information currently shielded by the Secrecy Act.

First, in the present context, the "private interest" at stake is Georgia death row prisoners' interest in being put to death humanely. This interest is particularly compelling, as it is an Eighth Amendment right that directly implicates individual liberty. *See Ake*, 470 U.S. at 78, 105 S. Ct. at 1093 ("The private interest in the accuracy of a . . . proceeding that places an individual's life or liberty at risk is almost uniquely compelling."). Correlatively, any prisoner bringing a method-of-

36

execution claim has a substantial interest in knowing the properties of drug compounds the State intends to push into his bloodstream and in what manner this will cause him to die. Indeed, the Supreme Court has emphasized that prisoners raising Eighth Amendment claims in the death penalty context must be afforded procedures necessary to provide them a "fair opportunity" to pursue their claims. *See Hall*, 134 S. Ct. at 2001 ("Persons facing [the death penalty] must have a *fair opportunity* to show that the Constitution prohibits their execution." (emphasis added)). Therefore, the private interest at stake here is a significant interest weighing heavily in favor of procedural protections that ensure death row prisoners have access to information about Georgia's drug compound and lethal injection process.

Second, combined with the circumstances surrounding Georgia's lethal injection process, the Secrecy Act poses a serious "risk of an erroneous deprivation" of death row prisoners' interest in a humane execution. *See Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. Given the inconsistent viability of the drug compound upon which Georgia relies for its executions, *see Gissendaner II*, 803 F.3d at 570, the State's lethal injection process poses a risk of painful execution. The Secrecy Act exacerbates this risk. The Secrecy Act denies Georgia prisoners an opportunity to review "information necessary to state an Eighth Amendment claim about lethal injection," as it bars access to, *inter alia*, information about the

37

manufacturing of the State's drug compound, the qualifications of the persons responsible for developing the compound, and the medical equipment used to carry out the execution. *See Terrell*, 807 F.3d at 1281 (Martin, J., concurring); Ga. Code § 42-5-36(d)(2). This "lack of disclosure" greatly increases the risk of an inhumane execution because it prevents any meaningful "debate between adversaries" about Georgia's lethal injection process, despite such debate being "essential to the truth-seeking function of trials." *See Gardner v. Florida*, 430 U.S. 349, 360, 97 S. Ct. 1197, 1206 (1977) (holding that a capital defendant's due process rights were violated because he was sentenced without being provided access to information relevant to the trial court's sentencing decision); *Ford*, 477 U.S. at 414, 106 S. Ct. at 2604 (When "the factfinder loses the substantial benefit of potentially probative information[,] [t]he result is a much greater likelihood of an erroneous decision."). Meanwhile, the substitute procedural safeguard of simply providing prisoners access to requested information about Georgia's lethal injection process would easily reduce this risk.

Finally, Georgia's interest in the Secrecy Act does not outweigh the first two *Mathews* factors. As noted above, this "State interest" factor requires consideration of "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. The function of the Secrecy Act is to

protect Georgia's drug compound suppliers and others involved in the State's lethal injection process from being scrutinized by opponents of capital punishment. *See Gissendaner II*, 803 F.3d at 569; Cook & Rankin, *supra* note 2. Such scrutiny could result in heavy fiscal and administrative burdens for Georgia, including a dearth of access to lethal drug compounds or those willing to administer them.

Though Georgia's interest in continuing to administer capital punishment in a fiscally and administratively viable manner is legitimate under current Supreme Court precedent, *see Glossip*, 135 S. Ct at 2732–33, 2737, this purpose cannot justify the Secrecy Act's far-reaching ban on the release of information about Georgia's lethal injection process. Georgia can efficiently achieve this purpose through practices that respect death row prisoners' right to procedural due process. For example, Georgia could ban the public release of information pertaining to its capital punishment methodology but still provide prisoners with access to this information by allowing trial courts to issue protective orders prescribing discovery methods that protect the State's interest in secrecy.[6] *See* Fed. R. Civ. P. 26(c)(1); *cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S. Ct. 989, 1002–03 (1987) (recognizing that where a conflict exists between a State's assertion of confidentiality in a criminal trial and a defendant's right to due process, records

---

[6] At least one federal court has adopted this strategy in this exact context. *See Moeller v. Weber*, No. 04-4200 at *4 (D.S.D. May 2, 2008) ("In consideration of the circumstances of this case, the Court is allowing [the State] . . . to submit *in camera* the lethal injection protocols sought in discovery and to designate any redactions the [State] believes are appropriate.").

may be submitted to the trial court for *in camera* review). It is simply not difficult to conceive of a cost-effective procedure through which Georgia may account for death row prisoners' due process rights while protecting its stated interests. As such, Georgia's interest in the Secrecy Act does not outweigh the countervailing due process issues resulting from the Secrecy Act's significant imposition on the right of death row prisoners to be free from cruel and unusual punishment.

\*    \*    \*

In sum, under the *Goldberg* analysis, the Secrecy Act violates Georgia death row prisoners' right to procedural due process. These prisoners have an Eighth Amendment right to be executed humanely, and this right triggers procedural due process protections in the context of method-of-execution claims. Weighing the *Mathews* factors, it is clear that these protections encompass the right to access information protected by the Secrecy Act: (1) the prisoners' private interest in a humane execution is a significant liberty interest, (2) the Secrecy Act unacceptably contributes to a risk of an erroneous deprivation of that interest by shielding critical information about Georgia's capital punishment methodology, and (3) Georgia's interest in the Secrecy Act can be easily achieved through alternative practices that are less burdensome to prisoners.

**III**

Denied a fair opportunity to challenge their methods of execution, Jones and other Georgia death row prisoners will spend the final moments of their lives in fear, not only of death, but also of being subjected to a painful execution in violation of the Eighth Amendment. Supreme Court precedents and our Nation's commitment to the dignity of all persons should foreclose this result. Nevertheless, it is the reality Georgia death row prisoners face due to this court's steadfast refusal to apply the proper procedural due process framework to claims like the one Jones raises. Accordingly, I dissent.[7]

---

[7] Judge Marcus's opinion concurring in the denial of Jones's request for an en banc hearing argues that various factors counsel against our full court hearing Jones's case at this time. I do not find this argument persuasive. For example, the opinion asserts that Jones has not properly pled an Eighth Amendment claim under *Glossip* because he did not allege a feasible alternative to Georgia's method of execution. However, Jones pled that a "feasible, readily implemented alternative that would significantly reduce [the] substantial risk of severe pain presented by Georgia's continued use of their anonymous pharmacist would be for them to obtain their drugs from a different source." This is more than sufficient at the pleading stage, especially considering Jones has been denied access to information by the Secrecy Act that would allow him to supplement his pleading.

Indeed, Judge Marcus's concurrence suggests precisely why this case should be heard en banc—to allow thorough briefing and for this court to properly consider the exceptionally important constitutional and related issues presented.

JORDAN, Circuit Judge, dissenting from denial of rehearing en banc.

As I have indicated before, I believe that Georgia's Secrecy Act – given the problems that occurred when the state first sought to execute Kelly Gissendaner – has constitutional problems. *See Gissendaner v. Commissioner*, 803 F.3d 565, 579 (11th Cir. 2015) (Jordan, J., dissenting).

A state violates the Eighth Amendment if it uses an execution method that is sure or very likely to cause serious illness and needless suffering and there is a feasible, viable, and readily implemented alternative that significantly reduces the risk of such suffering. *See Glossip v. Gross*, 135 S.Ct. 2726, 2737 (2015). It seems to me, therefore, that death row inmates have a protected liberty interest under the Fourteenth Amendment in avoiding unnecessary pain. That is not a constitutional stretch, for the Supreme Court has, in the clemency context, held that a "prisoner under a death sentence remains a living person, and consequently has an interest in his life" that is protected by the Due Process Clause and which entitles him to "some *minimal* procedural safeguards." *See Ohio Adult Parole Authority v. Woodward,* 523 U.S. 272, 288-89 (1998) (O'Connor, J., concurring in part and concurring in the judgment). *See Gissendaner v. Commissioner*, 794 F.3d 1327, 1331 (11th Cir. 2015) (explaining that Justice O'Connor's concurring opinion in *Woodward* provided the holding for that case).

42

This interest requires us to decide what process is due to prisoners like Mr. Jones who seek information about Georgia's compounded pentobarbital.  I think we should have taken this case en banc to address the Fourteenth Amendment challenge mounted by Mr. Jones because, as Judge Wilson explains, our opinion in *Wellons v. Commissioner*, 754 F.3d 1260, 1266 (11th Cir. 2014), did not perform the due process analysis required by *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976), and its progeny.   With respect, I dissent.

ROSENBAUM, Circuit Judge, joined by WILSON, MARTIN, JILL PRYOR, Circuit Judges, dissenting:

Today Brandon Jones will be executed, possibly in violation of the Constitution. He may also be cruelly and unusually punished in the process. But if he is, we will not know until it's too late—if ever.

I agree with Judge Wilson that Georgia's Lethal Injection Secrecy Act may well deny Brandon Jones and other death-row prisoners their Fourteenth Amendment procedural-due-process rights. I write separately because I also believe that the Act may deprive Jones and others in his position of their "fundamental constitutional right of access to the courts" under the Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1977).[1]

---

[1] Arguably, Jones's Complaint could be read to raise this issue, as it refers generally to the "depriv[ation] . . . of due process" and specifically asserts that, for rights that can be enforced only prospectively, such as the Eighth Amendment right to be free of cruel and unusual punishment, "the Supreme Court has not hesitated to recognize a due process right to the information necessary to determine whether a violation is risked." *See* Complaint at 3, 14-15. While the Complaint cites a procedural-due-process case in support of the later proposition, the proposition is also supported on what appear to be substantive-due-process grounds by *Bounds* and its progeny. In particular, the quoted sentence from Jones's Complaint may be read to encompass the argument that where information in the state's control is necessary to demonstrate a prospective Eighth Amendment violation, the Supreme Court has recognized a right to that information so that prisoners may access the courts to make their Eighth Amendment claims. Regardless of whether Jones's Complaint may be viewed as having sufficiently raised a substantive-due-process argument, though, other death-row prisoners face the same obstacles to presenting their Eighth Amendment claims as Jones. And Georgia's Lethal Injection Secrecy Act may well violate prisoners' substantive-due-process rights, as well as their procedural-due-process rights.

While the Court in *Bounds* did not explicitly ground the right in the Due Process Clause of the Fourteenth Amendment, the prisoners in *Bounds* challenged North Carolina's failure to provide them with law libraries under the Fourteenth Amendment, and the Supreme Court ultimately held that the prisoners' "fundamental constitutional right of access to the courts require[d] prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.*

In *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 2187-88 (1996), Justice Scalia considered the source of the "fundamental constitutional right" *Bounds* had identified:

> The weakness in the Court's constitutional analysis in *Bounds* is punctuated by our inability, in the 20 years since, to agree upon the constitutional source of the supposed right. We have described the right articulated in *Bounds* as a "consequence" of due process, *Murray v. Giarratano*, 492 U.S. 1, 11, n. 6, 109 S. Ct. 2765, 2771, n. 6, 106 L. Ed.2d 1 (1989) (plurality opinion) (citing *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800, 1814, 40 L. Ed. 2d 224 (1974)), as an "aspect" of equal protection, 492 U.S., at 11, n. 6, 109 S. Ct., at 2771, n. 6 (citation omitted), or as an "equal protection guarantee," *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987). In no instance, however, have we engaged in rigorous constitutional analysis of the basis for the asserted right. Thus, even as we endeavor to address the question presented in this case—whether the District Court's order "exceeds the constitutional requirements set forth in *Bounds*," Pet. for

45

> Cert. i—we do so without knowing which Amendment to the Constitution governs our inquiry.

*Id.* at 367, 116 S. Ct. at 2187-88.  Nevertheless, it seems to me that the *Bounds* fundamental right of access to the courts is most readily grounded in substantive due process.

On the merits, Georgia's Lethal Injection Secrecy Act may well violate Jones's *Bounds* fundamental constitutional right of access to the courts by foreclosing his ability to effectively pursue an Eighth Amendment challenge to Georgia's administration of lethal injections.[2] As cabined by Justice Scalia in *Lewis*, the *Bounds* right is the right to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996) (quoting *Bounds*, 430 U.S. at 825, 97 S. Ct. at 1496).  Essentially, the *Bounds* right ensures that states may not "effectively foreclose access" to the courts.  *Bounds*, 430 U.S. at

---

[2] It bears noting that Jones does not seek to challenge lethal injections in general as an unconstitutional method of execution; rather, he seeks to challenge Georgia's administration of the lethal-injection method and, in particular, Georgia's procurement of drugs from an unreliable source, to the extent the facts bear out the premise.  It is currently impossible to bring such a claim because Georgia's shield law precludes Jones from learning the facts regarding the procurement of the drugs and, specifically, whether they are obtained from a competent compounder.  In other words, any Eighth Amendment challenge Jones might be able to bring to the manner in which Georgia administers its lethal-injection method is arguably not yet even ripe.  And under the law in this Circuit, it arguably can never become ripe while Georgia's secrecy law persists.  Even if the State informs a prisoner that a problem with the drugs existed but has been corrected, the prisoner will have no claim ripe for review.  *See Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 568 (11th Cir. 2015).  Otherwise, any claim will not become ripe until it is too late for the prisoner.  The prisoner can know whether the drugs are improperly compounded or stored only by actually being executed with them, and that is knowledge that he will take to his grave.

822, 97 S. Ct. at 1495. "'[M]eaningful access to the courts is the touchstone'" of "the right vindicated by *Bounds*." *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180 (quoting *Bounds*, 430 U.S. at 823, 97 S. Ct. at 1495). Here, Georgia's shield law prevents prisoners from obtaining meaningful access to the courts by effectively foreclosing their ability to bring an Eighth Amendment challenge to the administration of the lethal-injection method in Georgia.

Moreover, recognizing a prisoner's *Bounds* substantive-due-process right of access to the courts as an independent right separately establishes standing. To establish actual injury in a *Bounds* claim, a party need only show that the "actions that allegedly violate[d] [his] right of access to the courts . . . impeded [his] pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). In other words, a prisoner must demonstrate only that Georgia's shield law "hindered his efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate his basic constitutional rights." *Id.* at 1291 (quotation marks omitted). We've clarified that "[t]he injury requirement [in a *Bounds* claims] means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1271 (11th Cir. 2010). In practice that means that "[t]he allegations about the underlying cause of action

47

must be specific enough to give fair notice to the defendants and must 'be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 2187 (2002)).

Jones easily meets the injury requirement for a *Bounds* claim. Jones not only noted an underlying cause of action the vindication of which is prevented by denial of access to the courts—his Eighth Amendment claim, he unsuccessfully pursued that claim as a separate cause of action. As described by Judge Wilson, Georgia's shield law precluded Jones from vindicating his Eighth Amendment claim by effectively preventing him from making the two-pronged showing required by the Supreme Court's decision in *Glossip v. Gross*, 576 U.S. ___, ___, 135 S. Ct. 2726, 2737 (2015).

Nor was Jones's underlying Eighth Amendment claim frivolous. In his Complaint, Jones included specific allegations that Georgia's current source for its lethal-injection drugs has provided two separate batches of drugs that became cloudy and congealed; that Georgia was forced to delay two executions out of concerns over the efficacy of those batches of drugs; that the cloudy and congealed appearance of those batches may have been caused by underlying defects in the drugs that would induce excruciating pain if administered; and that those underlying defects may not always cause the drugs to turn cloudy or congeal. *See*

48

*also* Declaration of Michael Jay, Ph.D., chairman of the Division of Molecular Pharmaceutics at the Eshelman School of Pharmacy at the University of North Carolina at Chapel Hill, filed in support of Jones's Complaint (opining that the cloudy batches of drugs had been "compounded improperly"; that "[n]ot all irregularities are detectable to the naked eye"; that "[t]here is a real possibility that a compounded formulation could have a dangerous pH level or be polluted with contaminants, but would not display any outward manifestations of its internal flaws"; and that, as a result, the drug "could result in excruciating pain and suffering upon injection").  In sum, Jones has already suffered actual injury sufficient to confer standing to pursue his *Bounds* claim: he has been denied his fundamental constitutional right of access to the courts to pursue his nonfrivolous Eighth Amendment challenge.

*Lewis*'s limitation of *Bounds* is also inapplicable here.  Jones does not seek from Georgia the provision of a service that may fairly be described as akin to a "demand [for] permanent provision of counsel," *Lewis*, 518 U.S. at 354, 116 S. Ct. at 2181, unlike the prisoners in *Lewis*.  Rather, he challenges Georgia's affirmative shielding of information—a practice that precludes Jones from being able to reach the courts in the first place.  In short, *Lewis* is distinguishable from Jones's case and does not bar his *Bounds* claim.

For these reasons, I believe that Georgia's secrecy law raises serious substantive-due-process concerns, in addition to the procedural-due-process claim identified by Judge Wilson. I dissent from the denial of *en banc* hearing in Jones's case.