PER CURIAM:
Kelly Gissendaner filed in the United States District Court a 42 U.S.C. § 1983 complaint seeking to prevent the State of Georgia from executing her for the murder of Douglas Gissendaner in 1997. She claims that the execution, which is scheduled for later today, will violate the Cruel and Unusual Punishment Clause of the Eighth Amendment for a number of reasons. Earlier this year, we affirmed the dismissal of a similar complaint by her. Gissendaner v. Comm’r, 779 F.3d 1275, 1284 (11th Cir.2015).
Gissendaner’s most recent complaint, filed on March 9, 2015, does contain some variations to her continuing attack on Georgia’s lethal injection protocol. Those variations and her claim were addressed by the district court in an order and opinion filed on August 10, 2015. We agree with the reasoning of that order and opinion and attach a copy of it as part of this opinion. See Appendix A. We also agree with the district court’s denial of Gissen-daner’s motion for reconsideration and motion for a temporary restraining order and a stay of execution.
We add a few comments of our own to what the district court wrote. First, Gis-sendaner’s attorneys ignored the requirements of Federal Rule of Civil Procedure 8. Instead of filing a complaint that contains “a short and plain statement of the claim showing that the pleader is entitled to relief,” as Rule 8(b)(2) requires, they filed a document styled “Complaint and Memorandum of Law.” The rules do not permit combining a memorandum of law with a complaint. The result of their ignoring Rule 8 is a document that is anything but a short and plain statement of a claim. It quotes Camus, numerous newspaper and magazine articles as well as internet postings, and resorts to hyperbolic language (e.g., “There is a name for such a proceeding: a star chamber.”). The district court would have been well within its discretion to strike the document.
Second, Gissendaner’s position that her Eighth Amendment rights have been or will be violated cannot be squared with Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015). As the district court explained:
The Supreme Court has specifically “outlined what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim.” A plaintiff “cannot successfully challenge a method of execution unless [she] establishes] that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers.” Thus, “[t]o prevail on such a claim, there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.” In addition, the plaintiff “must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.”
Appendix A at 18-19 (citations to Glossip omitted).
The Supreme Court has held that “some risk of pain is inherent in any method of •execution,” and that “the Constitution does not require the avoidance of all risk of pain.” Glossip, 135 S.Ct. at 2733. What the Constitution requires is avoidance of “a substantial risk of serious harm, an objectively intolerable risk of harm.” Id. at 2737 (quotation marks omitted). An “objectively intolerable” risk, in this context, means that “prisoners must identify an *568 alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain.” Id. (quotation marks omitted). The allegations Gissendaner has pleaded concerning the events of March 2, 2015, which is the basis of her complaint, do not evidence, much less establish, that she faces “a substantial risk of serious harm.” To the contrary, the allegations that those charged with carrying out her previously scheduled execution stopped it out of a concern that there might be a problem with the lethal injection drug, evidences exactly the opposite. The allegations show that the defendants were cautious and took steps to avoid a substantial risk of serious harm.
To put it in Iqbal and Twombly terms, Gissendaner has failed to plead “enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Although it is not a “probability requirement,” Iqbal and Twombly’s plausibility standard nonetheless “asks for more than a sheer possibility” that the plaintiffs allegations are true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). “[A] plaintiff cannot rely on ‘naked assertions devoid of further factual enhancement.’ ” Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir.2013) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949).
Third, the document Gissendaner filed as a complaint does not allege the other element of an Eighth Amendment execution protocol claim, which is “an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain.” Glossip, 135 S.Ct. at 2733 (quotation marks omitted). The document does not even mention an alternative method or protocol or acknowledge the requirement that there be one.
We respectfully disagree with our dissenting colleague’s view that the readily available alternative requirement of Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) and Glossip does not apply to Gissendaner’s claim on the ground that this is an as-applied challenge instead of a facial challenge. To begin with, there is no real difference between the nature of the challenges in Baze and Glossip and the challenge here. The plaintiffs in Baze, for example, did not contend that lethal injection in general or the three-drug protocol used by Kentucky in particular was facially unconstitutional. As the Supreme Court explained in that case:
Petitioners do not claim that lethal injection or the proper administration of the particular protocol adopted by Kentucky by themselves constitute the cruel or wanton infliction of pain. Quite the contrary, they concede that “if performed properly,” an execution carried out under Kentucky’s procedures would be “humane and constitutional.” Brief for Petitioners 31. That is because, as counsel for petitioners admitted at oral argument, proper administration of the first drug, sodium thiopental, eliminates any meaningful risk that a prisoner would experience pain from the subsequent injections of pancuronium and potassium chloride. See Tr. of Oral Arg. 5; App. 493-494 (testimony of petitioners’ expert that, if sodium thiopental is “properly administered” under the protocol, “[i]n virtually every case, then that would be a humane death”).
Instead, petitioners claim that there is a significant risk that the procedures will not be properly followed — in particular, that the sodium thiopental will not be properly administered to achieve its intended effect — resulting in severe pain when the other chemicals are administered.
*569 Baze v. Rees, 553 U.S. at 49, 128 S.Ct. at 1530 (emphasis added).
Similarly, in the present case, Gissen-daner does not claim that when the proper procedures for obtaining, storing, and using pentobarbital are' followed, it will be ineffective and cause cruel or wanton infliction of pain. Instead, she challenges the way that Georgia obtains, stores, and uses pentobarbital, which is similar to the challenges that Baze mounted against Kentucky’s protocol. In that case the allegations were that there was a risk of improper administration of the drug because of the difficulty of compounding the solution, the possibility of an improper placement of catheters, and the possibility of an improper-rate of injection. Baze, 553 U.S. at 54, 128 S.Ct. at 1533. If the challenge in this case to Georgia’s protocol is an as applied one, so was the one in Baze, and it was in Baze that the Supreme Court announced the readily available alternative requirement. What Gissendaner is ultimately seeking is to force Georgia to change its procedures for obtaining, storing, and using pentobarbital which will, as a practical matter, force it to change its lethal injection protocols, and that is the same type of relief that the plaintiffs sought in Baze and Glossip. Not only that, but there is no logical reason why there should be a readily available alternative requirement in facial challenges to lethal injection protocols but not to as-applied challenges to them.[1]
Finally, it is noteworthy that the lethal injection drug that Georgia uses in its single-drug protocol is pentobarbital, which, the Supreme Court has recognized, opponents, to capital punishment have made largely unavailable through open channels. Glossip, 135 S.Ct. at 2733. To require, as Gissendaner is seeking, that Georgia open up about its source of pento-barbital would result in the drug becoming completely unavailable for use in executions, even though its use does not violate the Eighth Amendment. See id.
The judgment dismissing the complaint and all attendant orders, including the denial of the motion for a restraining order and stay of execution, are AFFIRMED.
APPENDIX A
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA .
ATLANTA DIVISION
KELLY RENEE GISSENDANER, Plaintiff, v. HOMER BRYSON Commissioner, Georgia Department of Corrections, et al., Defendants.
CIVIL ACTION FILE NO. 1:15-CV-689-TWT
*570 OPINION AND ORDER
The Plaintiff Kelly Renee Gissendaner was scheduled to be executed on March 2, 2015. However, prior to the scheduled execution, a doctor inspected the lethal injection drugs that were to be used and concluded that there maybe safety concerns. Consequently, the State of Georgia did not proceed with the Plaintiffs execution. The Plaintiff contends that this incident has given rise to several Eighth Amendment claims. It is before the Court on the Defendants’ Motion to Dismiss [Doc. 9]. For the reasons set forth below, the Motion to Dismiss [Doc. 9] is GRANTED.
I. Background
The facts of this case have already been explained in detail on multiple occasions.[1] Thus, the Court will provide only the facts that are material to this Order. In 1998, the Plaintiff Kelly Renee Gissendaner was convicted of murder and sentenced to death.[2] On February 9, 2015, the Superior Court of Gwinnett County issued an order directing the Georgia Department of Corrections to execute Gissendaner.[3] Ultimately, the Plaintiffs execution was scheduled for March 2,2015.[4]
This sparked an initial wave of litigation. In one of these cases, the Plaintiff argued that Georgia’s lethal injection protocol— the details of which are kept confidential from the public — violated the Eighth Amendment of the United States Constitution. Due to applicable and binding Eleventh Circuit authority, the Court dismissed the Plaintiffs claim and denied her request for a stay of execution, and the Eleventh Circuit subsequently affirmed.[5]
On March 2, 2015, the Plaintiff was transported to the Georgia Diagnostic and Classification Prison in Jackson, Georgia for her execution.[6] However, during an inspection of the lethal injection drugs that were to be used on the Plaintiff, the State of Georgia’s “doctor and ... pharmacist were concerned about the cloudiness of the drugs and believed that they were not appropriate for medical use.”[7] After roughly thirteen hours of deliberation, the Defendants — Homer Bryson (the Commissioner for the Georgia Department of Corrections) and Bruce Chatman (Warden for the Georgia Diagnostic and Classification Prison) — chose not to move forward with the execution.[8] On March 3, the Defendants’ “counsel ... informed [the Plaintiffs counsel] that [the Defendants] had decided that her execution would not proceed before her warrant window closed.”[9] The Defendants are now conducting an investigation into the March 2 incident.[10] However, the details regarding this investigation, along with any results, will not be disclosed.[11]
The Plaintiff brought suit, asserting Eighth Amendment claims based upon the *571 March 2 incident. The Plaintiff appears to advance two legal theories. First, she argues that the Defendants violated the Eighth Amendment when they left her in a state of “uncertainty” for nearly thirteen hours while they decided how to move forward after being apprised of the “cloudy” drugs.[12] Second, the Plaintiff renews an argument that she made in a previous lawsuit: that Georgia’s lethal injection protocol is unconstitutional. Even though the Defendants inspected the drugs and ultimately chose not to have them injected into the Plaintiff, the Plaintiff argues that the March 2 incident shows that the State of Georgia’s “current lethal injection practices are inadequate to prevent violations of Eighth Amendment rights.”[13] The Defendants now move to dismiss.
II. Legal Standard
A plaintiff may survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[14] For a claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief.[15] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[16]
III. Discussion
A. March 2, 2015 Incident
The Plaintiff claims that the incident that occurred on her scheduled execution date, March 2, 2015,. caused her “immense fear and anxiety.”[17] In particular, the Plaintiff claims that she was placed under a cloud of uncertainty while state officials determined how to proceed after being notified that the drugs were “cloudy.” She claims that for hours she was unsure of whether she would be executed on that date and which drugs they would use. Thus, according to the Plaintiff, the incident constituted “cruel and unusual punishment” under the Eighth Amendment. The Eighth Amendment “which applies to the States through the Due Process Clause of the Fourteenth Amendment ... prohibits the infliction of ‘cruel and unusual punishments’ on those convicted of crimes.”[18] For those already incarcerated, “only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.”[19] This has an ob *572 jective and subjective component. A “prison official violates the Eighth Amendment only when ... the deprivation alleged ... [is] objectively, ‘sufficiently serious.’ ”[20] And “Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into state of mind ... the offending conduct must be wanton.”[21] This is because the “Eighth Amendment ... bans only cruel and unusual punishment ” and so “[i]f the pain inflicted is not formally meted out as punishment ... some mental element must be attributed to the inflicting officer before it can qualify.”[22] And to be clear, the Eighth Amendment “proscribes more than physically barbarous punishments.”[23] However, “[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny.”[24]
Based on the allegations in the Complaint, the March 2 incident did not constir tute “cruel and unusual punishment.” The Plaintiff does not allege that the state officials were intending to inflict pain upon her. The Plaintiff appears to acknowledge that the incident was inadvertent; caused by unforeseen events. And the Supreme Court has already found that “[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.”[25] Indeed, in State of Louisiana ex rel. Francis v. Resweber,[26] the Supreme Court was faced with similar facts. There, the plaintiff “was ... convicted of murder and ... sentenced to be electrocuted.”[27] He was “prepared for execution and on- May 3, 1946 ... was placed in the official electric chair.”[28] However, presumably because of a mechanical problem, when the “executioner threw the switch ... death did not result.”[29] The plaintiff was then “removed from the chair and returned to prison” and “[a] new death warrant was issued ... fixing the execution for May 9, 1946.”[30] The plaintiff asserted an Eighth Amendment claim, which the Supreme Court rejected.[31] As part of its analysis, the Supreme Court stated that “[t]he situation of the unfortunate victim of this accident is just as though he had suffered the identical amount of mental anguish and physical pain in any other occurrence, such as, for example, a fire in the cell block.”[32] And when recounting Resweber in a subsequent case, the Supreme Court reiterated that “[b]ecause the first attempt had been thwarted by an *573 ‘unforeseeable accident,’ the officials lacked the culpable state of mind necessary for the punishment to be regarded as ‘cruel,’ regardless of the actual suffering inflicted.”[33]
In response, the Plaintiff first argues that the March 2 incident is “attributable to negligence, and not an accident.”[34] But to “show an Eighth Amendment violation a prisoner must typically show that a defendant acted, not just negligently, but with ‘deliberate indifference.’ ”[35] Thus, the Plaintiffs admission — that she has alleged only that the Defendants were negligent— undermines her claim.
The Plaintiff then cites to the case of In re Medley[36] for the proposition that uncertainty regarding one’s execution may amount to “cruel and unusual punishment” in violation of the Eighth Amendment.[37] This is patently false. The issue in In re Medley had nothing to do with the Eighth Amendment. In that case, the petitioner was convicted for a murder that “took place on the 13th day of May of [1889].”[38] However, he was then sentenced “under [a] statute of Colorado ... which went into effect July 19, 1889,” even though “the crime on account of which the sentence was passed was ... committed on the 13th day of May of the same year.”[39] Thus, “the only question ... before [the Court] was whether the act ... which ... became operative on the 19th day of July ... and under which the sentence complained of was imposed ... [was] an ex post facto law, so as to be void under the ... constitution of the United States.”[40] The Supreme Court stated “that any law which [is] passed after the commission of [an] offense for which the party is being tried is an ex post facto law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed.” [41] The new statute that the petitioner was sentenced under included a provision not found in its predecessor. In particular, the new statute stated that “the warden is charged with the power of fixing the precise day and hour when the prisoner shall be executed; that he is forbidden to communicate that time to the prisoner ... in fact, the prisoner is to be kept in utter ignorance of the day and hour when his mortal life shall be terminated by hanging, until the moment arrives when this act is to be done.”[42] The petitioner simply objected “to this provision as being a departure from the law as it stood before, and as being an additional punishment to the prisoner, and therefore ex post facto.”[43] The Supreme Court agreed, and found that the “secrecy must be accompanied by an immense mental anxiety amounting to a great increase of the offender’s punishment.”[44] However, although the Supreme Court found that this *574 uncertainty constituted an additional “punishment,” it did not find that this punishment was “cruel and unusual” under the Eighth Amendment. In fact, to the contrary, it acknowledged that “under all former systems of administering capital punishment the officer appointed to execute it had a right to select the time of the day when it should be done.”[45] But even putting that to one side, In re Medley is distinguishable^ for another reason: the uncertainty that the petitioner was placed under was deliberate, and was intended to be a punishment. Indeed, that very uncertainty was mandated by the statute itself. Thus, the subjective component of the Eighth Amendment test could have more easily been satisfied. By contrast, the Defendants here did not intentionally subject the Plaintiff to uncertainty for the sake of inflicting more pain upon her. Accordingly, the Plaintiffs Eighth Amendment claim based upon the mental anguish she suffered as a result of the March 2 incident should be dismissed.
B. Method of Execution
The Plaintiff argues that the State’s execution procedure violates the Eighth Amendment. Thus, the Plaintiff seeks injunctive relief. The Supreme Court has specifically “outlined what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim.”[46] A plaintiff “cannot successfully challenge a method of execution unless [she] establishes] that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers.”[47] Thus, “[t]o prevail on such a claim, there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.”[48] In addition, the plaintiff “must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.”[49]
Here, the Plaintiff made a similar argument in a previous lawsuit where she sought to enjoin her execution. As noted earlier, the Court rejected this argument, and the Eleventh Circuit affirmed in a binding opinion.[50] .The difference in this lawsuit, however, is that the Plaintiff is arguing that the March 2 incident establishes that the procedure the State will use on her execution date[51] will be cruel and unusual.[52] The Court rejects this argument as well.
*575 First, it is not enough to show that the State may obtain defective lethal injection drugs. To establish that the entire method of execution — which includes all safeguards — violates the Eighth Amendment, the Plaintiff must show that there is a substantial risk that the defective drugs will be used on the Plaintiff, and that the drugs will then cause “serious illness and needless suffering.” Even assuming that the March 2 incident supports the former, it undermines the latter. If anything, the March 2 incident shows that the State is unlikely to use defective drugs on the Plaintiff. Indeed, according to the Complaint, the Defendants had a doctor inspect the drugs prior to any use.[53] The doctor then consulted a pharmacist, who agreed that the drugs appeared “cloudy.”[54] Once the Defendants were made aware of the safety concerns, they elected not to proceed with the execution.[55]
Second, the Plaintiff has also failed to adequately allege that there is a substantial risk that the drugs obtained for her future execution will be defective. To be sure, the Plaintiff does not allege that the drugs obtained for the March 2 execution were necessarily defective, or that they certainly would have caused “serious illness and needless suffering.” Indeed, she acknowledges that it is currently “unclear why the drugs were cloudy.”[56] According to the Plaintiff, all that is known “about the drugs ... [is] that Defendants’ own doctor and pharmacist deemed them ‘inappropriate’ for medical use.”[57] .But even assuming the drugs were defective, that alone does not necessarily mean that it is significantly likely that defective drugs will be obtained again.[58] The Plaintiffs claim still amounts to speculation, and the Eleventh Circuit has held that “speculation that a drug ... will lead to severe pain or suffering cannot substitute for” a showing “that the use of the drug is sure or very likely to cause serious illness and needless suffering.”[59]
In response, the Plaintiff points out that the Defendants have refused to disclose the details regarding their investigation into the March 2 incident. This secrecy, the Plaintiff argues, inhibits her from accessing facts that may bolster her Eighth Amendment claim. A similar argument was made in Wellons v. Commissioner, Georgia Department of Corrections.[60] There, the plaintiff argued “that the Eighth Amendment entitles him to the information required to determine whether Georgia’s lethal injection procedure is cruel and unusual.”[61] Ultimately, the Eleventh Circuit rejected this argument.[62] However, in his concurring opinion in Wel-lons, Judge Wilson made note of the “disturbing circularity problem created by Georgia’s secrecy law regarding methods *576 of execution.”[63] He acknowledged that it was “due to his lack of information” that the plaintiff failed to establish the level of risk necessary to prevail on his Eighth Amendment claim.[64] But Judge Wilson nonetheless concurred. Although the plaintiff failed to establish an Eighth Amendment claim due to the State’s secrecy, he nonetheless failed to establish an Eighth Amendment claim. The applicable Eighth Amendment standard does not fluctuate based upon the information a plaintiff has in his possession.[65] Here, similarly, it may be true that the Defendants’ secrecy is the reason the Plaintiff cannot utilize the March 2 incident to establish an Eighth Amendment claim. But like in Wellons, this allegation of secrecy does not relieve her of the burden of coming forward with facts that are sufficient to state a plausible claim for relief. Accordingly, the Plaintiffs Eighth Amendment claim regarding the State of Georgia’s lethal injection protocol should be dismissed.
IV. Conclusion
For these reasons, the Court GRANTS the Defendants’ Motion to Dismiss [Doc.' 9].
SO ORDERED, this 10 day of August, 2015.
/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

. The decision in Siebert v. Allen, 506 F.3d 1047 (11th Cir.2007), does not serve as an authoritative interpretation of the requirements announced in Baze and Glossip because it preceded both of those decisions. In addition, the facts of Siebert involved not a challenge to how the protocol was applied generally but a claim that the plaintiff's unique medical condition would enhance the likelihood and severity of a painful death. The case of Bucklew v. Lombardi, 783 F.3d 1120 (8th Cir.2014), while post-Baze, although pre-Glossip, also involved a plaintiff with a unique medical condition that could result in severe pain even if the protocol was properly applied. It might be said that in Siebert and Bucklew the challenge was to the protocols or drugs as applied to one death row plaintiff, not as applied to all death row inmates in the state, which is what we have here and what the Supreme Court had in Baze and Glossip.

. See, e.g., Gissendaner v. Seaboldt, 735 F.3d 1311 (11th Cir.2013); Gissendaner v. State, 272 Ga. 704, 532 S.E.2d 677 (2000).

. Compl., at 5.

. Compl., at 6.

. Id.

. See Gissendaner v. Commissioner, Georgia Department of Corrections, 779 F.3d 1275, 1279 (11th Cir.2015).

. Compl., at 7.

. Compl., at 9.

. Compl., at 2.

. Compl., at 10.

. Compl., at 2.

.Compl., at 2, 13.

. Compl., at 3 (The Plaintiff claims that she "endured hours of unconstitutional torment and uncertainty — to which she had not been sentenced — while Defendants dithered about whether they could execute her.”).

. Compl., at 2-3.

. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).”).

. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

. See id.; Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (A “plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.”) (internal quotation marks omitted).

. Pl.'s Resp. Br., at 37.

. Wilson v. Seiter, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

. Ingraham v. Wright, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (internal quotation marks omitted) (emphasis added).

. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

. Wilson, 501 U.S. at 302, 111 S.Ct. 2321 (emphasis in original).

. Id. at 300, 111 S.Ct. 2321.

. Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

. Estelle, 429 U.S. at 105, 97 S.Ct. 285; see also Baze v. Rees, 553 U.S. 35, 50, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) ("[A]n accident, with no suggestion of malevolence ... d[oes] not give rise to an Eighth Amendment violation.”).

. 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947).

. Id. at 460, 67 S.Ct. 374.

. Id.

. Id.

. Id. at 460-61, 67 S.Ct. 374.

. See id. at 464, 67 S.Ct. 374.

. Id.

. Wilson, 501 U.S. at 297, 111 S.Ct. 2321.

. Pl.’s Resp. Br., at 41.

. Minneci v. Pollard, - U.S. -, 132 S.Ct. 617, 625, 181 L.Ed.2d 606 (2012) (emphasis added).

. 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890).

. Pl.’s Resp. Br., at 37-39.

. Id. at 161, 10 S.Ct. 384.

. Id. at 162, 10 S.Ct. 384 (emphasis added).

. Id. at 162-63, 10 S.Ct. 384 (emphasis added).

. Id. at 171, 10 S.Ct. 384.

. Id. at 172, 10 S.Ct. 384.

. Id.

. Id.

. Id.

. Glossip v. Gross, - U.S. -, 135 S.Ct. 2726, 2737, 192 L.Ed.2d 761 (2015).

. Id. (internal quotation marks and citations omitted).

. Id. (internal quotation marks and citations omitted).

. Id. (internal quotation marks omitted).

. See Gissendaner v. Commissioner, Georgia Department of Corrections, 779 F.3d 1275, 1283 (11th Cir.2015) ("None of Gissendaner’s factual allegations or evidence present facts that establish a high level of likelihood that she will suffer serious illness or needless suffering during her execution.”).

. As of the filing of the Complaint, the Plaintiff's next execution date has not been decided.

. PL’s Resp. Br., at 42-43 ("[The Plaintiff] ... asserts that the events' of March 2-3 demonstrate that Defendants’ protocols and procedures present a 'substantial risk of significant harm,’ and that they must not be allowed to again place her at risk.”).

. Compl., at 9.

. Id.

. Compl., at 11.

. Compl., at 14.

. Id.

. See Baze v. Rees, 553 U.S. 35, 50, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (“[A]n isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a ‘substantial risk of serious harm.’ ”).

. Wellons v. Commissioner, Georgia Department of Corrections, 754 F.3d 1260, 1265 (11th Cir.2014) (internal quotation marks omitted).

. 754 F.3d 1260 (11th Cir.2014).

. Id. at 1264.

. See id. at 1267.

. Id. at 1267 (Wilson, J. concurring).

. Id.

. Cf. Wilson v. Seiter, 501 U.S. 294, 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (Eighth Amendment requirements may not be "ignored as policy considerations might dictate.”).