*934 WILSON, Circuit Judge,
dissenting:
I do not believe that this court has jurisdiction to deny Brandon Jones’s request for a stay. Moreover, I disagree with the Majority’s conclusions that Jones has not shown a substantial likelihood of success on the merits and that the equities counsel against imposing a stay. Therefore, I respectfully dissent.
First, Jones’s request for a stay is moot. Jones requested a stay pending this court’s decision on whether to consider his challenge to Georgia’s Lethal Injection Secrecy Act en banc, and, understanding that an en banc hearing will not take place, this court’s decision to issue an opinion denying the motion is unnecessary.
Second, for the reasons discussed in my forthcoming dissent to this court’s denial of Jones’s request for an en banc hearing, I believe that Georgia’s Lethal Injection Secrecy Act violates his right to due process under the Fifth, Eighth, and Fourteenth Amendments. The fact that Jones did not appeal the district court’s decision on his Eighth Amendment method-of-execution claim does not doom his due process claim. Contrary to the Majority’s assertions, Jones’s decision not to appeal the district court’s dismissal of the method-of-execution claim does not untether his due process challenge to the Secrecy Act from that claim. Jones argues in his briefing that without access to information protected by the Secrecy Act, his method-of-execution claim is foreclosed. In other words, Jones’s due process claim is inextricably intertwined with his method-of-execution claim. In light of this close relationship, if we find the Secrecy Act unconstitutional, then we have discretion to vacate and remand to allow the district court to consider Jones’s method-of-execution claim. See 28 U.S.C. § 2106. Thus, Jones has stated a claim involving imminent injury: the Secrecy Act violates his due process rights by preventing him from pursuing his method-of-execution claim.
Finally, I find the Majority’s arguments regarding' the equities wholly unpersuasive, especially considering the recent factual and legal developments relevant to Georgia’s lethal injection process and method-of-execution claims.
For these reasons and those to follow in my dissent from the denial of Jones’s request for an en banc hearing, I dissent.
WILSON, Circuit Judge, dissenting, joined by MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges, and as to Part I by JORDAN, Circuit Judge:
The Constitution’s prohibition against cruel and unusual punishment protects persons who are sentenced to death from being executed in a manner that denies basic human dignity. See U.S. Const, amend. VIII; Glossip v. Gross, 576 U.S. -, -, 135 S.Ct. 2726, 2737, 192 L.Ed.2d 761 (2015); Baze v. Rees, 553 U.S. 35, 50, 128 S.Ct. 1520, 1531, 170 L.Ed.2d 420 (2008) (plurality opinion). Indeed, “[b]y protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons.” Hall v. Florida, 572 U.S. -, —, 134 S.Ct. 1986, 1992, 188 L.Ed.2d 1007 (2014) (internal quotation marks omitted). The Eighth Amendment relies on the Fifth and Fourteenth Amendments for support in fulfilling the constitutional promise of dignity in state-enforced deaths. That is to say, if persons who are sentenced to death are denied a fair opportunity to challenge an unconstitutional method of execution, then the Eighth Amendment’s guarantee is meaningless. See Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 170, 71 S.Ct. 624, 647-48, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (protecting the “elementary rights of men” *935 requires “fairness” and “[a]n opportunity to be heard”).
Here, the State of Georgia’s Lethal Injection Secrecy Act (Secrecy Act) denies death row prisoners, such as Brandon Jones, a fair opportunity to protect their Eighth Amendment rights because it precludes them from accessing information necessary to challenge their method of execution. As a result, these prisoners are denied the “basic ingredient of due process”: “an opportunity to be allowed to substantiate a claim before it is rejected.” See Ford v. Wainwright, 477 U.S. 399, 414, 106 S.Ct. 2595, 2604, 91 L.Ed.2d 335 (1986) (plurality opinion) (internal quotation marks omitted). Seeking a fair opportunity to challenge his method of execution, Jones requests that our court consider en banc whether the Secrecy Act violates his right to procedural due process.
In Goldberg v. Kelly and subsequent cases, the Supreme Court put forth a clear framework for examining procedural due process claims. See 397 U.S. 254, 262-63, 90 S.Ct. 1011, 1017-18, 25 L.Ed.2d 287 (1970) (“The extent to which procedural due process must be afforded the [individual] is influenced by the extent to which he may be condemned to suffer grievous loss ... and depends upon whether the [individual]’s interest in avoiding that loss outweighs the governmental interest [at stake.]” (citation and internal quotation marks omitted)); Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). However, our court has consistently rejected due process challenges to the Secrecy Act without applying this framework. Our failure to pérform the proper analysis in these cases was legal error, and that error is fatal to our jurisprudence. Under the Goldberg line of cases, the Secrecy Act violates the due process rights of Georgia’s death row prisoners, thereby undermining our Nation’s requirement that those sentenced to death be humanely executed.
Accordingly, at a minimum, an en banc hearing is needed to rectify this court’s failure to apply the proper procedural due process framework to challenges to the Secrecy Act. Moreover, I believe that, were we to apply the proper framework, we would conclude that the Secrecy Act is unconstitutional. For these reasons, I respectfully dissent from our court’s denial of Jones’s request to consider the constitutionality of the Secrecy Act en banc.
I
Prisoners seeking to challenge their method of execution as unconstitutional under the Eighth Amendment face a “heavy burden.” Terrell v. Bryson, 807 F.3d 1276, 1281 (11th Cir.2015) (per cu-riam) (Martin, J., concurring). To succeed on a method-of-executión claim, a prisoner must show (1) “the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers,” and (2) “identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain.” Glossip, 135 S.Ct. at 2737 (alteration adopted and internal quotation marks omitted). In the context of lethal injection, this means the prisoner must present evidence that the State’s drug compound and/or injection process present a significant risk of harm. In addition, the prisoner must know enough about the State’s drug compound to be able to offer a distinguishable, feasible alternative. Thus, information regarding the composition of the State’s compound,' the source of the compound, the compound’s manufacturing process, and the actual injection process is critical to raising a lethal injec *936 tion method-of-execution claim.[1]
Georgia relies on lethal injection to execute death row prisoners. In 2013, Georgia enacted the Secrecy Act to protect information related to its lethal injection process.[2] Under the Secrecy Act:
The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure ... under judicial process.
Ga.Code § 42-5-36(d)(2). Hence, the Secrecy Act “effectively insulates” the “source, quality, and composition of’ the State’s lethal injection drug compound, as well as details about the personnel tasked with carrying out executions — such as their qualifications and training. See Terrell, 807 F.3d at 1281 (Martin, J., concurring). In other words, the Secrecy Act protects the exact information required to raise a method-of-execution claim under Glossip.
Shortly after the passage of the Secrecy Act, death row prisoners began challenging its constitutionality, asserting that it violates their due process rights by shielding information that is needed to pursue a method-of-execution claim. See Wellons v. Commissioner, 754 F.3d 1260, 1266 (11th Cir.2014) (per curiam); Gissendaner v. Commissioner (Gissendaner II), 803 F.3d 565, 567 (11th Cir.2015) (per curiam); Terrell, 807 F.3d 1276. These claims have divided our court, resulting in three of the six judges who reviewed the claims writing separately to voice concerns about the Secrecy Act’s constitutionality. See Wellons, 754 F.3d at 1267-68 (Wilson, J., concurring); Gissendaner II, 803 F.3d at 579 (Jordan, J., dissenting); Terrell, 807 F.3d at 1281 (Martin, J., concurring); id. at 1283 (Jordan, J., concurring).
This court was first confronted with a challenge to the Secrecy Act in Wellons. In that per curiam opinion, the majority held: “Neither the Fifth, Fourteenth, or First Amendments afford [the appellant] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.” Wellons, 754 F.3d at 1267 (internal quotation marks omitted). However, we only cursorily addressed the due process issues presented by the Secrecy Act and did not engage in the Goldberg procedural due process analysis. See id. When assessing subsequent challenges to the Secrecy Act, we merely have deferred to Wellons instead of engaging in the proper constitutional analysis, even in the face of legal and factual developments that indicate Wellons was wrongly decided.[3] See *937 Gissendaner II, 803 F.3d at 575-76; Terrell, 807 F.3d at 1276-77. As noted above, due to this incomplete approach, our precedents are legally deficient and contravene the Goldberg line of cases.
II
The Goldberg analysis is a two-step test for resolving procedural due process claims. The first step requires a court to determine whether the interest at stake triggers due process protections. See Morrissey, 408 U.S. at 481, 92 S.Ct. at 2600. “Whether any procedural protections are due depends on the extent to which [the] individual will be condemned to suffer grievous loss.” Id., 92 S.Ct. at 2600 (internal quotation marks omitted) (citing Goldberg, 397 U.S. at 263, 90 S.Ct. at 1018). After determining that an individual’s interest requires some procedural protection, the court must move to the second step. Id., 92 S.Ct. at 2600. Under that step, the court is tasked with identifying the “specific dictates of due process” demanded by the circumstances presented. See Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976). This inquiry requires a weighing of “the governmental and private interests that are affected.” See id. at 334, 96 S.Ct. at 902.
Applying the Goldberg analysis to Jones’s method-of-execution procedural due process claim reveals that the Secrecy Act violates his constitutional rights. First, Georgia prisoners sentenced to death face an imminent threat of “grievous loss” — an inhumane execution — and thus are entitled to procedural protections when challenging their method of execution.[4] Second, weighing the interests of Georgia’s death row prisoners, such as Jones, against those of the State of Georgia demonstrates that the due process owed the prisoners encompasses the right to access information shielded by the Secrecy Act.
A
A painful, inhumane execution is an imminent threat of “grievous loss” faced by all those condemned to die at the hand of the State of Georgia. Generally, whether an individual is condemned to “grievous loss” depends on both the “weight” of the individual’s interest and “whether the nature of the interest is one within the contemplation of the ‘liberty or property’ language of the Fourteenth Amendment.” See Morrissey, 408 U.S. at 481, 92 S.Ct. at 2600 (internal quotation marks omitted). A Georgia prisoner facing execution has the weightiest of interests in being free from a cruel and unusual execution — far less weighty interests enjoy due process *938 protections.[5] See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-41, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985) (protecting property interest in civil servant job); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9-11, 98 S.Ct. 1554, 1560-61, 56 L.Ed.2d 30 (1978) (protecting interest-in receiving public utilities). In addition, there is no doubt that a prisoner’s right to be free from an unconstitutional invasion of his body is a liberty interest under the Fourteenth Amendment. See Union Pac. Ry. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891) (“No right is held more sacred, or is more carefully guarded ... than the right of every individual to the possession and control of his own person, free from all restraint or interference from others, unless by clear and unquestionable authority of law.” (emphasis added)); Washington v. Harper, 494 U.S. 210, 229, 110 S.Ct. 1028, 1041, 108 L.Ed.2d 178 (1990) (holding that prisoners have a right to bodily integrity, free from unconsented injections). As such, Georgia death row prisoners raising Eighth Amendment method-of-execution claims are entitled to procedural due process protection that ensures they receive a fair opportunity to challenge their method of execution.
B
Turning to the second step of the Goldberg analysis, weighing the interests at stake demonstrates that the Secrecy Act impermissibly infringes on the due process rights of Georgia death row pris *939 oners raising method-of-execution claims. Balancing the private and governmental interests implicated by a procedural due process claim, like Jones’s, requires an assessment of “three distinct factors”: (1) “the private interest that will be affected by the official action”; (2) “the risk of an erroneous deprivation of such ' interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and (3) “the [State’s] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” See Mathews, 424 U.S. at 335, 96 S.Ct. at 903; Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985) (applying the “Mathews factors” where the defendant alleged he was “denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty [was] at stake”). These factors dictate a finding that Georgia death row prisoners must be afforded access to the information currently shielded by the Secrecy Act.
First, in the present context, the “private interest” at stake is Georgia death row prisoners’ interest in being put to death humanely. This interest is particularly compelling, as it is an Eighth Amendment right that directly implicates individual liberty. See Ake, 470 U.S. at 78, 105 S.Ct. at 1093 (“The private interest in the accuracy of a ... proceeding that places an individual’s life or liberty at risk is almost uniquely compelling.”). Correla-tively, any prisoner bringing a method-of-execution claim has a substantial interest in knowing the properties of drug compounds the State intends to push into his bloodstream and in what manner this will cause him to die. Indeed, the Supreme Court has emphasized that prisoners raising Eighth Amendment claims in the death penalty context must be afforded procedures necessary to provide them a “fair opportunity” to pursue their claims. See Hall, 134 S.Ct. at 2001 (“Persons facing [the -death penalty] must have a fair opportunity to show that the Constitution prohibits their execution.” (emphasis added)). 'Therefore, the private interest at stake here is a significant interest weighing heavily in favor of procedural protections that ensure death row prisoners have access to information about Georgia’s drug compound and lethal injection process.
Second, . combined with the circumstances surrounding Georgia’s lethal injection process, the Secrecy Act poses a serious “risk of an erroneous deprivation” of death row prisoners’ interest in a humane execution. See Mathews, 424 U.S. at 335, 96 S.Ct. at 903. Given the inconsistent viability of the drug compound upon which Georgia relies for its executions, see Gis-sendaner II, 803 F.3d at 570, the State’s lethal injection process poses a risk of painful execution. The Secrecy Act exacerbates this risk. The Secrecy Act denies Georgia prisoners an opportunity to review “information necessary to state an Eighth Amendment claim about lethal injection,” as it bars access to, inter alia, information about the manufacturing of the State’s drug compound, the qualifications of the persons responsible for developing the compound, and the medical equipment used to carry out the execution. See Terrell, 807 F.3d at 1281 (Martin, J., concurring); Ga.Code § 42-5-36(d)(2). This “lack of disclosure” greatly increases the risk of an inhumane execution because it prevents any meaningful “debate between adversaries” about Georgia’s lethal injection process, despite such debate being “essential to the truth-seeking function of trials.” See Gardner v. Florida, 430 U.S. 349, 360, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977) (holding that a capital defendant’s due process rights were violated because he was sentenced without being *940 provided access to information relevant to the trial court’s sentencing decision); Ford, 477 U.S. at 414, 106 S.Ct. at 2604 (When “the factfinder loses the substantial benefit of potentially probative information[,] [t]he result is a much greater likelihood of an erroneous decision.”). Meanwhile, the substitute procedural safeguard of simply providing prisoners access to requested information about Georgia’s lethal injection process would easily reduce this risk.
Finally, Georgia’s interest in the Secrecy Act does not outweigh the first two Mathews factors. As noted above, this “State interest” factor requires consideration of “the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” See Mathews, 424 U.S. at 335, 96 S.Ct. at 903. The function of the Secrecy Act is to protect Georgia’s drug compound suppliers and others involved in the State’s lethal injection process from being scrutinized by opponents of capital punishment. . See Gissendaner II, 803 F.3d at 569; Cook & Rankin, supra note 2. Such scrutiny could result in heavy fiscal and administrative burdens for Georgia, including a dearth of access to lethal drug compounds or those willing to administer them.
Though Georgia’s interest in continuing to administer capital punishment in a fiscally and administratively viable manner is legitimate under current Supreme Court precedent, see Glossip, 135 S.Ct. at 2732-33, 2737, this purpose cannot justify the Secrecy Act’s far-reaching ban on the release of information about Georgia’s lethal injection process. Georgia can efficiently achieve this purpose through practices that respect death row prisoners’ right to procedural due process. For example, Georgia could ban the public release of information pertaining to its capital punishment methodology but still provide prisoners with aeqess to this information by allowing trial courts to issue protective orders prescribing discovery methods that protect the State’s interest in secrecy.[6] See Fed. R.Civ.P. 26(c)(1); cf. Pennsylvania v. Ritchie, 480 U.S. 39, 60, 107 S.Ct. 989, 1002-03, 94 L.Ed.2d 40 (1987) (recognizing that where a conflict exists between a State’s assertion of confidentiality in a criminal trial and a defendant’s right to due process, records may be submitted to the trial court for in camera review). It is simply not difficult to conceive of a cost-effective procedure through which Georgia may account for death row prisoners’ due process rights while protecting its stated interests. As such, Georgia’s interest in the Secrecy Act does not outweigh the countervailing due process issues resulting from the Secrecy Act’s significant imposition on the right of death row prisoners to be free from cruel and unusual punishment.
:]: * *
In sum, under the Goldberg analysis, the Secrecy Act violates Georgia death row prisoners’ right to procedural due process. These prisoners have an Eighth Amendment right to be executed humanely, and this right triggers procedural due process protections in the context of method-of-execution claims. Weighing the Mathews factors, it is clear that these protections encompass the right to access information protected by the Secrecy Act: (1) the pris *941 oners’ private interest in a humane execution is a significant liberty interest, (2) the Secrecy Act unacceptably contributes to a risk of an erroneous deprivation of that interest by shielding critical information about Georgia’s capital punishment methodology, and (3) Georgia’s interest in the Secrecy Act can be easily achieved through alternative practices that are less burdensome to prisoners.
Ill
Denied a fair opportunity to challenge their methods of execution, Jones and other Georgia death row prisoners will spend the final moments of their lives in fear, not only of death, but also of being subjected to a painful execution in violation of the Eighth Amendment. Supreme Court precedents and our Nation’s commitment to the dignity of all persons should foreclose this result. Nevertheless, it is the reality Georgia death row prisoners face due to this court’s steadfast refusal to apply the proper procedural due process framework to claims like the one Jones raises. Accordingly, I dissent.[7]

.Indeed, one scholar has commented that, "because many [lethal injection drug compound suppliers] lack the ingredients, equipment, and processes to make ... drugs safely, the practices of the drug supplier can be very relevant to the question of whether the lethal injection procedure creates a substantial risk of significant pain.” Eric Berger, Lethal Injection Secrecy and Eighth Amendment Due Process, 55 B.C. L.Rev. 1367, 1389 n. 150 (2014).

. See Rhonda Cook & Bill Rankin, Lethal Injection Secrecy Bill Wins Approval, Atlanta J. ConstJMar. 26, 2013 6:29 PM), http://www. ajc.com/news/news/stateregional-govt-politicslethal-injection-secrecy-bill-wins-approval/nW4tK/, archived at http://perma.cc/ MV2W-WXCS.

. Post-Wellons, there have been legal and factual developments that heavily bear on the constitutionality of the Act. First, in March 2015, Georgia delayed the execution of a death row prisoner after the State determined *937 that its drug compound was defective. See Gissendaner II, 803 F.3d at 570. Judge Jordan noted the relevance of this development in his Gissendaner II dissent, asserting that “[the State] cannot hide behind [a] veil of secrecy once something has gone demonstrably wrong with [its drug compound].... It is not asking too much to require Georgia to put on some evidence that will provide some level of confidence that its [drug compound] is no longer a problem.” Id. at 579 (Jordan, J., dissenting). Second, subsequent to Wellons, the Supreme Court decided Glossip, which clarified the method-of-execution standard put forth in Baze. In Baze, seven justices wrote separately, creating confusion over the Court's holding and requiring the Court to revisit in Glossip the proper standard for challenging a method of execution. See Glos-sip, 135 S.Ct. at 2793-95 (Sotomayor, J., dissenting). Glossip confirmed that prisoners raising method-of-execution claims have a significant evidentiary burden, thus underscoring the importance of these prisoners having access to information about the challenged method.

. In fact, I cannot surmise a more grievous loss than an excruciating execution that violates one’s right to be free from cruel and unusual punishment.

. Georgia has argued in the past that the interest at stake in method-of-execution claims is not' sufficiently weighty to warrant due process protections because, unlike other contexts where the State’s decision will definitely violate an individual’s rights, there is only a risk that death row prisoners will be deprived of their Eighth Amendment right to a humane execution. However, given the grievousness of the loss at stake — a dehumanizing assault on an individual’s body — and the prevalence of botched lethal injection executions, the interest at stake clearly warrants some procedural protections. See Berger, supra note 1 at 1426 ("The series of recent botched executions amply demonstrate that, far from being frivolous, inmates’ lethal injection challenges identify very serious risks inherent in lethal injection, especially in states with a history of problems.”); Mark Berman, Arizona Execution Lasts Nearly Two Hours; Lawyer Says Joseph Wood Was “Gasping and Struggling to Breathe,” Wash. Post (July 23, 2014), http://www.washingtonpost.com/news/ post-nation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/; Mark Ber-man, Inmate Dies Following Botched Oklahoma Execution, Second Execution Delayed, Wash. Post (April 29, 2014), http://www. washingtonpost.com/news/post-nation/wp/ 2014/04/29/oklahoma-execution-botched-inmate-still-dies-second-executiondelayed/; Erica Goode, After a Prolonged Execution in Ohio, Questions over "Cruel and Unusual,” N.Y. Times (Jan. 17, 2014), http://www. nytimes.com/2014/01/18/us/prolonged-executionprompts-debate-over-death-penalty-methods.html; Peter Baker, Obama Orders Policy Review on Executions, • N.Y. Times (May 2, 2014), http://www.nytimes.com/2014/ 05/03/us/flawed-oklahoma-execution-deeply-troubling-obama-says.html; Andrew Buncombe, Charles Warner Execution: Oklahoma Inmate’s Last Words Are "My Body Is On Fire” as State Carries Out First Death Penalty in Nine Months, The Indep. (Jan. 15, 2015), http://www.independent.co.uk/news/ world/americas/charles-warner-execution-my-body-is-on-fire9981842.html. Considering Georgia’s recent problems with its lethal injection drug compound, this is especially true for Georgia death row prisoners. See Gissen-daner II, 803 F.3d at 579 (Jordan, J., dissenting); Tracy Connor, Georgia Execution of Kelly Gissendaner Postponed for Drug Issue, NBC News (Mar. 3, 2015, 5:58 PM), http:// www.nbcnews.com/storyline/lethal-injection/ georgia-execution-kelly-gissendaner-postponed-drug-issue-n315651; Declaration of Michael Jay, Ph.D. at 8, Jones v. Bryson, No. 1:15-cv-04445-CAP (N.D.Ga. Jan. 21, 2016) (concluding that, based on the information released by Georgia, it is impossible to determine whether the problems with Geor-gia's drug compound that arose in the context of Gissendaner II have been resolved).

. At least one federal court has adopted this strategy in this exact context. See Moeller v. Weber, No. 04-4200, 2008 WL 1957842 at *4 (D.S.D. May 2, 2008) ("In consideration of the circumstances of this case, the Court is allowing [the State] ... to submit in camera the lethal injection protocols sought in discovery and to designate any redactions the [State] believes are appropriate.”).

. 'Judge Marcus's opinion concurring in the denial of Jones’s request for an en banc hearing argues that various factors counsel against our full court hearing Jones’s case at this time. I do not find this argument persuasive. For example, the opinion asserts that Jones has not properly pled an Eighth Amendment claim under Glossip because he did not allege a feasible alternative to Geor-gia’s method of execution. However, Jones pled that a "feasible, readily implemented alternative that would significantly reduce [the] substantial risk of severe pain presented by Georgia’s continued use of their anonymous pharmacist would be for them to obtain their drugs from a different source.” This is more than sufficient at the pleading stage, especially considering Jones has been denied access to information by the Secrecy Act that would allow him to supplement his pleading.
Indeed, Judge Marcus’s concurrence suggests precisely why this case should be heard en banc — to allow thorough briefing and for this court to properly consider the exceptionally important constitutional and related issues presented.