ROSENBAUM, Circuit Judge, joined by WILSON, MARTIN, JILL PRYOR, Circuit Judges,
dissenting:
Today Brandon Jones will be executed, possibly in violation of the Constitution. He may also be cruelly and unusually punished in the process. But if he is, we will not know until it’s too late — if ever.
I agree with Judge Wilson that Georgia’s Lethal Injection Secrecy Act may well deny Brandon Jones and other death-row prisoners their Fourteenth Amendment procedural-due-process rights. I write separately because I also believe that the Act may deprive Jones and others in his position of their “fundamental constitutional right of access to the courts” under the Supreme Court’s decision in Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).[1]
While the Court in Bounds did not explicitly ground the right in the Due Process Clause of the Fourteenth Amendment, the prisoners in Bounds challenged North Carolina’s failure to provide them with law libraries under the Fourteenth Amendment, and the Supreme Court ultimately held that the prisoners’ “fundamental constitutional right of access to the courts require[d] prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.” Id.
In Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 2187-88, 135 L.Ed.2d 606 (1996), Justice Scalia considered the source of the “fundamental constitutional right” Bounds had identified:
The weakness in the Court’s constitutional analysis in Bounds is punctuated by our inability, in the 20 years since, to agree upon the constitutional source of the supposed right. We have described the right articulated in Bounds as a “consequence” of due process, Murray v. Giarratano, 492 U.S. 1, 11, n. 6, 109 S.Ct. 2765, 2771, n. 6, 106 L.Ed.2d 1 (1989) (plurality opinion) (citing Procu-nier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974)), as an “aspect” of equal protection, 492 *943 U.S. at 11, n. 6, 109 S.Ct. at 2771, n. 6 (citation omitted), or as an “equal protection guarantee,” Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987). In no instance, however, have we engaged in rigorous constitutional analysis of the basis for the asserted right. Thus, even as we endeavor to address the question presented in this case — whether the District Court’s order “exceeds the constitutional requirements set forth in Bounds,” Pet. for Cert, i — we do so without knowing which Amendment to the Constitution governs our inquiry.
Id. at 367, 116 S.Ct. at 2187-88. Nevertheless, it seems to me that the Bounds fundamental right of access to the courts is most readily grounded in substantive due process.
On the merits, Georgia’s Lethal Injection Secrecy Act may well violate Jones’s Bounds fundamental constitutional right of access to the courts by foreclosing his ability to effectively pursue an Eighth Amendment challenge to Georgia’s administration of lethal injections.[2] As cabined by Justice Scalia in Lewis, the Bounds right is the right to “a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.” Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (quoting Bounds, 430 U.S. at 825, 97 S.Ct. at 1496). Essentially, the Bounds right ensures that states may not “effectively foreclose access” to the courts. Bounds, 430 U.S. at 822, 97 S.Ct. at 1495. “ ‘Meaningful access to the courts is the touchstone’” of “the right vindicated by Bounds.” Lewis, 518 U.S. at 351, 116 S.Ct. at 2180 (quoting Bounds, 430 U.S. at 823, 97 S.Ct. at 1495). Here, Georgia’s shield law prevents prisoners from obtaining meaningful access to the courts by effectively foreclosing their ability to bring an Eighth Amendment challenge to the administration of the lethal-injection method in Georgia.
Moreover, recognizing a prisoner’s Bounds substantive-due-process right of access to the courts as an independent right separately establishes standing. To establish actual injury in a Bounds claim, a party need only show that the “actions that allegedly violate[d] [his] right of access to the courts ... impeded [his] pursuit of a nonfrivolous, post-conviction claim or civil rights action.” Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir.1998). In other words, a prisoner must demonstrate only that Georgia’s shield law “hindered his efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to *944 vindicate his basic constitutional rights.” Id. at 1291 (quotation marks omitted). We’ve clarified that “[t]he injury requirement [in a Bounds claims] means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts.” Cunningham v. Dist. Attorney’s Office for Escambia Cty., 592 F.3d 1237, 1271 (11th Cir.2010). In practice that means that “[t]he allegations about the underlying cause of action must be specific enough to give fair notice to the defendants and must ‘be described well enough to apply the ‘nonfrivolous’ test and to show that the ‘arguable’ nature of the underlying claim is more than hope.’” Id. (quoting Christopher v. Harbury, 536 U.S. 403, 416, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413 (2002)).
Jones easily meets the injury requirement for a Bounds claim. Jones not only noted an underlying cause of action the vindication of which is prevented by denial of access to the courts — his Eighth Amendment claim, he unsuccessfully pursued that claim as a separate cause of action. As described by Judge Wilson, Georgia’s shield law precluded Jones from vindicating his Eighth Amendment claim by effectively preventing him from making the two-pronged showing required by the Supreme Court’s decision in Glossip v. Gross, 576 U.S.-,-, 135 S.Ct. 2726, 2737, 192 L.Ed.2d 761 (2015).
Nor was Jones’s underlying Eighth Amendment claim frivolous. In his Complaint, Jones included specific allegations that Georgia’s current source for its lethal-injection drugs has provided two separate batches of drugs that became cloudy and congealed; that Georgia was forced to delay two executions out of concerns over the efficacy of those batches of drugs; that the cloudy and congealed appearance of those batches may have been caused by underlying defects in the drugs that would induce excruciating pain if administered; and that those underlying defects may not always cause the drugs to turn cloudy or congeal. See also Declaration of Michael Jay, Ph.D., chairman of the Division of Molecular Pharmaceutics at the Eshelman School of Pharmacy at the University of North Carolina at Chapel Hill, filed in support of Jones’s Complaint (opining that the cloudy batches of drugs had been “compounded improperly”; that “[n]ot all irregularities are detectable to the naked eye”; that “[t]here is a real possibility that a compounded formulation could have a dangerous pH level or be polluted with contaminants, but would not display any outward manifestations of its internal flaws”; and that, as a result, the drug “could result in excruciating pain and suffering upon injection”). In sum, Jones has already suffered actual injury sufficient to confer standing to pursue his Bounds claim: he has been denied his fundamental constitutional right of access to the courts to pursue his non-frivolous Eighth Amendment challenge.
Lewis’s limitation of Bounds is also inapplicable here. Jones does not seek from Georgia the provision of a service that may fairly be described as akin to a “demand [for] permanent provision of counsel,” Lewis, 518 U.S. at 354, 116 S.Ct. at 2181, unlike the prisoners in Lewis. Rather, he challenges Georgia’s affirmative shielding of information — a practice that precludes Jones from being able to reach the courts in the first place. In short, Lewis is distinguishable from Jones’s case and does not bar his Bounds claim.
For these reasons, I believe that Geor-gia’s secrecy law raises serious substantive-due-process concerns, in addition to the procedural-due-process claim identified by Judge Wilson. I dissent from the denial of en banc hearing in Jones’s case.

. Arguably, Jones’s Complaint could be read to raise this issue, as it refers generally to the "depriv[ation] ... of due process” and specifically asserts that, for rights that can be enforced only prospectively, such as the Eighth Amendment right to be free of cruel and unusual punishment, "the Supreme Court has not hesitated to recognize a due process right to the information necessary to determine whether a violation is risked.” See Complaint at 3, 14-15. While the Complaint cites a procedural-due-process case in support of the later proposition, the proposition is also supported on what appear to be substantive-due-process grounds by Bounds and its progeny. In particular, the quoted sentence from Jones’s Complaint may be read to encompass the argument that where information in the state’s control is necessary to demonstrate a prospective Eighth Amendment violation, the Supreme Court has recognized a right to that information so that prisoners may access the courts to make their Eighth Amendment claims. Regardless of whether Jones’s Complaint may be viewed as having sufficiently raised a substantive-due-process argument, though, other death-row prisoners face the same obstacles to presenting their Eighth Amendment claims as Jones. And Georgia's Lethal Injection Secrecy Act may well violate prisoners’ substantive-due-process rights, as well as their procedural-due-process rights.

. It bears noting that Jones does not seek to challenge lethal injections in general as an unconstitutional method of execution; rather, he seeks to challenge Georgia’s administration of the lethal-injection method and, in particular, Georgia’s procurement of drugs from an unreliable source, to the extent the facts beár out the premise. It is currently impossible to bring such a claim because Georgia's shield law precludes Jones from learning the facts regarding the procurement of the drugs and, specifically, whether they are obtained from a competent compounder. In other words, any Eighth Amendment challenge Jones might be able to bring to the manner in which Georgia administers its lethal-injection method is arguably not yet even ripe. And under the law in this Circuit, it arguably can never become ripe while Geor-gia's secrecy law persists. Even if the State informs a prisoner that a problem with the drugs existed but has been corrected, the prisoner will have no claim ripe for review. See Gissendaner v. Comm'r, Ga. Dep’t of Corr., 803 F.3d 565, 568 (11th Cir.2015). Otherwise, any claim will not become ripe until it is too late for the prisoner. The prisoner can know whether the drugs are improperly compounded or stored only by actually being executed with them, and that is knowledge that he will take to his grave.